## Case No. 4,562.

### EVANS v. HETTICK.

[3 Wash. C. C. 408;[1] 1 Robb, Pat. Cas. 166.]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1818.[2]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]
[2] [Affirmed in 7 Wheat. (20 U. S.) 453.]

Ingersoll, Rawle, and C. J. Ingersoll, for plaintiff,

Binney, Sergeant, and Joseph R. Ingersoll, for defendant,

WASHINGTON, Circuit Justice (charging jury). After stating the evidence on both sides, the facts intended to be proved by the evidence given in this cause, may be arranged under the following heads:—1. Such as respect the value of the plaintiff's hopperboy. 2. The time of its discovery. 3. The kind of machine used by the defendant. 4. The time of its discovery and use.

First. As to the first, the court has no observations to make, except that if you should find a verdict for the plaintiff, you will give the actual damages which the plaintiff has sustained, by reason of the defendant's use of his invention, which the court will treble.

Second. The evidence applicable to this head, if believed by the jury, proves, that in 1783, Oliver Evans communicated his investigation of the subject of an improvement in the manufactory of flour; and, in the summer of the same year, declared he had accomplished it. In 1784, he made a model of his hopperboy, which had no cords, weights, or pully; and, consequently, the lower arm was, for the sake of experiment, turned by the hand. In 1785, it was in operation in a mill, in as perfect a state as it now is.

Third. If the witness, who has been called to prove the kind of instrument used by the defendant, is believed by the jury—it consists of an upright square shaft, with a cog-wheel that turns it; and which is moved by the water power of the mill. This shaft is inserted into a square mortice in an arm or board, somewhat resembling an S., with strips of wood fixed on its under

side; and so arranged, as to turn the meal below it, cool, dry, and conduct it to the bolting chest. This arm slips with ease up and down the shaft, and must be raised by hand, and kept suspended, until the meal is put under it. It has no upper arm, pulley, weight, or leading lines; and the strips below the arm, are like the rake, as it is called, in the plaintiff's hopperboy. The machine has acquired the name of the S, or Stouffer hopperboy.

Fourth. The witnesses examined, to prove the originality and the use of the defendant's hopperboy, if believed by the jury, date them as early as the year 1765; and its erection and actual use, in many mills, in 1775, 1778, and progressively to later periods.

Objections have been made on each side, to the credit of some of the witnesses who have been examined on the other side; not on the ground of want of veracity, or character, but of interest short of that which can affect their competency. These objections have been pressed so far beyond their just limits, as to require from the court an explanation of their real value. Where the evidence of witnesses, opposed by other witnesses, is relied upon by either side to prove a particular fact, the jury must necessarily weigh their credit, in order to satisfy their own minds, on which side the truth is most likely to be; and, in making this inquiry, every circumstance which can affect the veracity of the witnesses, whether it concern their moral character, or arise from some interest which they may have in the question; or from feelings and wishes favourable to one or other of the parties, should be taken into the calculation. But, if the fact in controversy may exist, without a violation of probability, and the proof is by witnesses exclusively on that side; there is nothing to put into the opposite scale, against which to weigh the credit of these witnesses; and, if the objection to their credit be worth any thing, it must be to the full extent of rejecting their testimony altogether, or else it is worth nothing. The jury cannot compromise the matter, or halt between two opinions. They must decide that the fact is so, or is not so; and if the latter, because of objections to the credit of the witnesses, it would amount to a confounding of the questions of competency and credibility; for the effect would be the same, whether the court refused to permit the witness to testify, on the ground of incompetency, or the jury should reject the testimony when given on that of want of credibility. We have thought it proper to submit these general observations to the consideration of the jury.

We come now to the question of law which arises out of these facts, which is:—What are the things, in which the plaintiff alleges, and has proved, an exclusive property, which he asserts the defendant has used, and which he denies? The first claim is for an improved hopperboy, which the plaintiff insists is granted by his patent, which has received the sanction of the supreme court, and which the defendant acknowledges. This then being conceded ground, the court will proceed to examine it; and the inquiry in point of law will be, whether the plaintiff is entitled to a verdict, for an infringement of his patent, for an improved hopperboy? The objection stated by the defendant is, that the plaintiff has not set forth, in his specification, what are the improvements, of which he claims to be the inventor; so that a person skilled in the art, may comprehend distinctly in what they consist. This objection is, in point of fact, fully supported; neither the specification, nor any other document connected with the patent, states, or even alludes to any specific improvement in the hopperboy. Taking this as true, how stands the law? The 3d section of the patent law declares, "that before an inventor can receive a patent, he shall deliver a written description of his invention, in such full, clear, and exact terms, as to distinguish the same from all other things before known; and to enable a person skilled in the art, &c., of which it is a branch, to make and use the same." What then is the plaintiff's invention, as asserted by the plaintiff, conceded by the defendant, and sanctioned by the supreme court, in the case of Evans v. Eaton? The answer is, an improvement on the hopperboy, or an improved hopperboy, which that court have declared to be substantially the same. If this be so, then the section of the law, before mentioned, has declared, that he must specify this improvement, in full, clear, and exact terms. If he has not done so, he has no valid patent, on which he can recover.

The English decisions correspond with the injunctions of our law. The American decisions, so far as we have any report of them, maintain the same doctrine. Mr. Justice Story, in the case of Lowel v. Lewis [Case No. 8,568], lays it down, that "if the patent be for an improvement in an existing machine, the patentee, must in his specification distinguish the new from the old, and confine his patent to such parts only as are new; for, if both are mixed together, and a patent is taken for the whole, it is void." What is the reason for all this? In the first place, it is to enable the public to enjoy the full benefit of the discovery, when the patentee's monopoly is expired, by having it so described upon record, that any person, skilled in the art of which the invention is a branch, may be able to construct it. The next reason is, to put every citizen upon his guard, that he may not through ignorance violate the law, by infringing the rights of the patentee, and subjecting himself to the consequences of litigation. The inventor of the original machine, if he has obtained a patent for it, and all persons claiming under him, may lawfully enjoy the full benefit of that discovery, notwithstanding the improvement made upon it by a subsequent discoverer. If he has not

chosen to ask for a monopoly, but abandons it to the public, then it becomes public property, and any person has a right to use it. The inventor of the improvement may also obtain a patent for his discovery, which cannot legally be invaded by the inventor of the original machine, or by any other person. The rights of each are secured by law, and there is no incompatibility between them. But if a man, wishing to use the original invention, and honestly disposed to avoid an infraction of the improver's right, is unable to ascertain from any certain and known standard, where the original invention ends, and where the improvement commences, how is it possible for him to exercise his own acknowledged right, freed from the danger of invading that of another?—and to what acts of oppression might not this lead? Might not the patentee of his mysterious improvement, obtain from the ignorant, the timid, and even the prudent members of society, who wish to use the original discovery, the price he chooses to ask for a license to use his improvement; and in this way compel them to purchase it, rather than incur expenses and inconveniences far greater than the sum demanded would pay for or compensate? If this may happen, then the improver enjoys in a degree the benefit of a discoverer, both of the original machine, and also of the improvement. In short, the patentee of the improvement may, to a certain extent, keep all others at arm's length as to the original invention, or make them pay him for it in derogation of the rights of the inventor of the original machine. If this be the law applicable to the cases in general, is this an excepted case? The plaintiff's counsel have not directly asserted it to be so; but they have referred, with some emphasis, to what is said by the supreme court, in the case of Evans v. Eaton, 3 Wheat. [16 U. S.] 518. The expressions are, "in all cases where the plaintiff's claim is for an improvement, it will be incumbent on him to show the extent of his improvement, so that a person understanding the subject, may comprehend distinctly in what it consists." This decision does not state, in what way the extent of the plaintiff's improvement is to be proved, nor did the case require that the supreme court should be more explicit. The obvious conclusion is, that the court left that matter undecided, and meant that the extent of the plaintiff's improvement should be shown, according to the rules of law; a contrary construction would be most unfair, and unwarranted.

Is it possible to believe, that if the supreme court intended to decide contrary to the 3d section of the patent law, and to the English and American decisions, that this was a case without the influence of that law, and those decisions, such intention would have been expressed in such guarded terms? This cannot be admitted. Neither can the private act, for the relief of Oliver Evans, warrant

the argument, that this case is freed from the restrictions contained in the 3d section of the patent law; because, except as to the extent of the grant it refers to; and the supreme court, in the case cited, considers it as within the provisions of that law, is it likely that the supreme court could have meant, that the plaintiff might cure the defect of his specification, by proving to the jury in what his improvements consisted? If so, then as to the present defendant, such an explanation would be unavailing, to save him from the consequences of an error, against which the sagacious wit of man could not have guarded him. He has sinned already, if he has invaded the plaintiff's right; and it is now too late to convince him of his error, if he must be a victim of it, for the want of that light which is now shed upon the act, long after his supposed transgression. But of what avail would this explanation be, after the expiration of the plaintiff's monopoly? The parol evidence given in a court of justice, is evanescent, and affords the most unsafe notice of facts, particularly when they respect matters of art, that can be supposed. What man, who wishes not to invade the plaintiff's patent, would venture to erect a hopperboy, merely from the information which he could gather from this trial? He could obtain none upon which he could safely rely; nor could any artist, after the expiration of the plaintiff's right, be enabled from such a source, to know how to construct this improvement. But, even if the extent of the improvement could be traced in this way, the plaintiff has not attempted to prove it; and what is more, his counsel, although repeatedly called on to point it out, have not attempted to do it. Can the jury, without evidence, and without the aid of the plaintiff or his counsel, say in what these improvements consist? If they had never seen another hopperboy, supposed to be the original, this would be impossible. If having seen the Stouffer hopperboy, they can do so, by comparing with it the plaintiff's improved hopperboy, then the consequence seems to be almost inevitable, that the Stouffer hopperboy is the original one, the point which, under the next head, is denied by the plaintiff. But if the specification had stated in what the plaintiff's improvement consisted, still he is not entitled to a verdict for a violation of that right, unless he has proved, to your satisfaction, that the plaintiff has infringed that right.

Upon the whole, this patent, so far as it is for an improvement, cannot be supported; and as to any claim founded on that right, the plaintiff is not entitled to your verdict.

2d. The plaintiff contends, that he is the original inventor, not only of the improved hopperboy, but of the whole machine;—that his patent grants him the exclusive right to both, and that this claim has received the sanction of the supreme court. Whether, in point of fact, he is the original inventor of

the hopperboy, will be attended to hereafter; neither shall we stop to inquire whether the plaintiff's patent grants him the right; because, if the supreme court has sanctioned the claim, that is law for this court. The part of the decision of that court, relied upon by the plaintiff's counsel, is to be found in page 517, 3 Wheat. [16 U. S.], where the chief justice says: "The opinion of the court, then, is, that Oliver Evans may claim, under his patent, the exclusive use of his inventions and improvements in the art of manufacturing flour and meal, and in the several machines which he has invented, and in his improvements on machines previously discovered." It would seem almost impossible to misunderstand this positive declaration of the court. It appears to be the result of the previous reasoning. It states that the plaintiff may claim: 1. The exclusive use of his improvements and inventions in the art of manufacturing flour. 2. In the several machines which he has invented. 3. In his improvements on machines previously discovered. As to the first, there is no dispute in this cause. The third has been already disposed of. The second is now to be examined.

It is contended, by the defendant's counsel, that this is not the correct construction of this sentence in the decision of the court, because it is inconsistent with the pretensions of the plaintiff's counsel (see Mr. Harper's argument, 3 Wheat. [16 U. S.] 499), and with the course of argument of the chief justice, throughout the opinion which led to the foregoing conclusion. This supposed inconsistency may, in the opinion of this court, be explained by the following observations:—The exceptions taken to the charge of this court, in the case of Evans y. Eaton, were—1st. He stating that the patent of Oliver Evans was only for the combined effect of all the machines mentioned in his patent; and 2d. In directing the jury to find for the defendant, if they should be of opinion, that the hopperboy was in use prior to the improvement alleged to have been made by Oliver Evans. These were the only questions presented to the view of the supreme court, upon which it was deemed proper by that court to give an opinion. The reasoning of the chief justice, therefore, is intended to prove and to correct these errors in the charge, by showing that Oliver Evans was entitled by his patent, and the accompanying documents, not only to the general result, but to an improvement on the hopperboy, one of the machines used in combination, to produce that result. If he had regard to an improvement on the hopperboy, this court was clearly wrong, in directing the jury to find a verdict for the defendant, if they should be of opinion, that the hopperboy was in use prior to the plaintiff's improvement; because, it was unimportant who was the original discoverer of the hopperboy, provided the plaintiff had a patent for an improved hopperboy, and the defendant used that improvement; and the charge precluded that

inquiry. But whilst the judge aims to prove that Oliver Evans was entitled to this double claim, he does not exclude any other claim. There is one expression, relied upon by the defendant's counsel as having this appearance; but it is more likely that the word relied on is a typographical error, than that the court should both deny and affirm the plaintiff's right, as an original inventor of the hopperboy. When the court came to state, definitively, what were the plaintiff's claims, under his patent, the whole are distinctly stated. The act "for the relief of Oliver Evans," authorizes a grant to him of his improvement in the art of manufacturing flour, and in the several machines which he has invented, and in his improvements, &c. The court says, 3 Wheat. [16 U. S.] 508, that the application "is co-extensive with the act." If, then, in this enumeration of the plaintiff's rights under the patent, that to the machines had been omitted, it might have been supposed, that it was not recognized by that court; and it was consequently introduced in order to prevent a conclusion against its validity, although it had not been brought into view in the previous argument, because a matter not in dispute. This course of reasoning is, we think, strongly fortified by what the court says, 3 Wheat. [16 U. S.] 518. "In all cases, where his claim is for an improvement on a machine, it will be incumbent on him to show the extent of his improvement, so that a person understanding the subject, may comprehend distinctly in what it consists." Now, if his claim was confined to an improvement, produced by the combined operation of all the machines, and to an improvement in the separate machines, why should the court have stated hypothetically what was to be proved, in case the plaintiff claimed for an improvement? This sentence, following immediately that which has been relied upon by the defendant's counsel, seems to explain it, and to fortify the construction which we have given to it.

Upon the whole, we are of opinion, that the question, who is the original inventor of the hopperboy, is left open by the supreme court, and is now to be decided by this jury.

If, then, the jury should be of opinion, upon the evidence, that the hopperboy which the defendant uses, was invented and in use prior to the discovery of Oliver Evans, then your verdict ought to be for the defendant. But to this instruction, there are objections which it is proper to notice. It is contended, that the judgment of the supreme court, in Evans v. Eaton, 3 Wheat. [16 U. S.] 519, where it is said that there is error in the proceedings below, in that, in the charge the opinion is expressed that Oliver Evans is not entitled to recover, if the hopperboy in his declaration mentioned, had been in use previous to his alleged discovery, entitles the plaintiff to a verdict; although the jury should be of opinion, that he is not the original inventor of the hopperboy. That the

court did not mean this, is most obvious, from what is said in page 517, that "Oliver Evans may claim the exclusive use of the several machines, which he has invented;" could the supreme court intend to say, immediately after, that he is entitled to a verdict for a machine which he has not invented? Can it be supposed, that the court meant to ride over the third section of the patent law, and set up a different rule to govern this case, without having stated the reasons for so extraordinary a distinction? This is altogether inadmissible.

Another reason may be urged against the conclusion drawn by the plaintiff's counsel, from the judgment, which is this:—The error to be corrected by that part of the judgment relied on, that "the court instructed the jury to find for the defendant, if they should be of opinion, that the hopperboy was in use prior to the invention of Oliver Evans's improvement." Now, the words "in the declaration mentioned," are not in the charge of the circuit court, as stated by the chief justice, which the supreme court proposes to condemn; and it is the insertion of these words into the judgment, which produces all the difficulty. Leave them out, and then the judgment is consistent with the whole reasoning of the chief justice, which condemned the charge of the circuit court; because it precluded Oliver Evans from obtaining a verdict for his improvement, if he was not the inventor of the elementary parts of the machine. Retain them, and it follows, that if Oliver Evans was proved not to be the inventor of the hopperboy, in his declaration mentioned, still, the defendant was not entitled to a verdict. This would be in such direct opposition to the 6th section of the patent law, that we cannot suppose this was the meaning of the supreme court.

2. The next objection to this instruction is, that the act of the legislature of Pennsylvania, conveyed to Oliver Evans the original hopperboy; and consequently, its existence and use, at a period prior to the plaintiff's discovery, cannot now be urged to invalidate his patent. There are two conclusive answers to this argument—(1) That it is by no means to be admitted, that the act operates to make such a transfer; but (2) if it did, still, the plaintiff cannot recover, if he appears not to be the first, or original inventor of the hopperboy. This claim in this action is not derived either from the state, or from an individual. His suit is founded on his patent, and unless he was himself the original inventor of the hopperboy, he cannot recover.

3. Another objection stated by the plaintiff's counsel, is, that the Stouffer hopperboy, although the jury should believe that it was in use, in many mills, before the plaintiff's discovery, had fallen into disuse; and, therefore, it cannot be used to invalidate the plaintiff's right to recover. The answer to this is, that whether it fell into disuse, or not, if it was used before the plaintiff's discovery, the plaintiff could not obtain a patent for it, so as to exclude the defendant from using it, if he chose to do so.

4. The last objection is, that the use of the Stouffer machine, cannot affect the plaintiff's patent, unless it was public, so as to affect the plaintiff, or other inventors, with notice. Whether that hopperboy was in public use, or not, the jury will judge, from the testimony of the witnesses. It was erected, and used in four or five mills; if the witnesses are believed, who have testified for the defendant, on that point. But this argument has no foundation in the act of congress, which does not speak of public use, of the nature represented by the counsel. It is immaterial, whether the patentee had notice of the prior invention, or not. If it was in use, in any part of the world, however unlikely or impossible that the fact should come to the knowledge of the patentee, his patent for the same machine cannot be supported.

Verdict for the defendant.