## Case No. 9,404.

### MELLUS v. SILSBEE.

[4 Mason, 108; [1] 1 Robb. Pat. Cas. 506.]

Circuit Court, D. Massachusetts.   Oct. Term. 1825.

PATENTS—PUBLIC USE—DEDICATION—ENGLISH PATENT ACT—ON A SALE.

1. If an inventor knowingly suffers his invention to go into public and general use without objection. it is a dedication of it to the public. and he cannot afterwards resume the exclusive right.

[Cited in Whitney v. Emmett. Case No. 17,-585; Shaw v. Cooper. 7 Pet. (32 U. S.) 318; Bartlette v. Crittenden. Case No. 1,082: Locomotive Engine Safety Truck Co. v. Pennsylvania R. Co., Id. 8,453; Henry v. Providence Tool Co., Id. 6,384; Anderson v. Eiler, 46 Fed. 780.]

2. Our patent act differs from the English in several respects. A mere public use by others before taking a patent. on a sale thereof by the inventor. is not decisive against him here. as it is in England.

[Cited in Allen v. Blunt. Case No. 217; Wilder v. McCormick. Id. 17,650; Jones v.

[1] [Reported by William P. Mason, Esq.]

Sewall, Id. 7,495; Henry v. Francestown Soap-Stone Stove Co., Id. 6,382.]

Case for infringement of a patent, dated the 3d of August, 1822, for an improvement "in the mode of securing from decay the plank, forming the deck, waist, or bottom of ships or vessels, at or near the head of the nails, spikes, or bolts, in correction of the mode heretofore adopted of boring and driving the nails, spikes, or bolts, by which the planks are secured to the timber, beams, or frames, and the mode of securing the head from the effect of the water." Plea, the general issue.

Upon the trial it appeared, that the plaintiff first made the invention in 1804; and had suffered it to go into general use without any claim of an exclusive right, or any objection, and without receiving any compensation, until the year 1822. The invention was not much used until after 1809, but since the peace of 1815 it had come into very general and public use.

Mr. Webster, for defendant, took several exceptions to the plaintiff's right, and among them, that the plaintiff could not recover, because his allowing the invention to go into public use was a waiver of the exclusive privilege, and it would now be a fraud to enforce it.

Nichols & Gorham, for plaintiff, contended, e contrà, that there had been no such general use as excluded the plaintiff from a recovery. He had a right to allow the public use, so as to test the utility of the invention, and for as long a period as he thought necessary for that purpose.

STORY, Circuit Justice. There is a difference between the language and effect of our statute respecting patents, and that of England. The statute of 21 Jac. 1, c. 3, commonly called the statute of monopolies, prohibits the grant of monopolies generally; but in the sixth section it excepts "letters patent and grants of privileges for 14 years or under, of the sole working or making of any manner of new manufactures within this realm, to the true and first inventor and inventors of such manufactures, which others at the time of making such letters patent and grants shall not use." Upon this statute it has been held, that it is not necessary that the invention should be new to all the world, but it is sufficient, if new within the realm of England, and it matters not whether learned by travel or by study. Edgeberry v. Stephens, Salk. 446. The provision further is, that it must be an invention which others, at the time of making the letters patent, "shall not use." Therefore it was held in Wood v. Zimmer, Holt, 58, Dav. Pat. Cas. 429, by Lord Chief Justice Gibbs, that if the inventor, before obtaining a patent, allows his invention to go into public use, he cannot entitle himself to a patent. The public sale of it by the inventor to other persons for use,

makes the patent void. It is not then new to the realm, but is used by others within the meaning of the statute.

Our patent act uses language somewhat different. The first section (Act Feb. 21, 1793, c. 11 [1 Stat. 318]) declares, that "when any person or persons, &c. shall allege that he or they have invented any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement on any art, machine, manufacture, or composition of matter, not known or used before the application," he or they shall, on application to the secretary of state, &c. &c. be entitled to a patent. If this were all, there would be great difficulty in construing the words, "not known or used before the application," differently from the words of the English statute, "which others, at the making of the letters patent and grants, shall not use." We should be driven, therefore, to consider the accuracy of the decision of Lord Chief Justice Gibbs. But the 6th section of our statute throws light on this subject, and enables the court to ascertain with more precision the intention of the legislature. That section authorizes the defendant to give certain matters in evidence, by way of defence, under the general issue, upon proper notice, and among other things, that "the thing thus secured by patent was not originally discovered by the patentee, but had been in use, or had been described in some public work, anterior to the supposed discovery of the patentee." Upon these clauses it has been uniformly held, that it must be shown that the invention is new, not only in the United States, but to the world, and that it was not in use before the asserted discovery. The fact of its being in use before his discovery is, by the sixth section, made decisive against the patentee. Now, if the intention of the legislature had been, by the first section, to provide, that the mere fact of the invention being "known or used," even with the inventor's permission, before the application for a patent, should destroy his right, however otherwise well founded, it is strange, that the use should not be limited, in the sixth section, to the time of such application, instead of the "supposed discovery." The sixth section manifestly proceeds upon the ground, that the same thing being in use at the time of the supposed discovery establishes, that there is nothing new in the invention; but it may be known and used at the time of the application for a patent, and yet the applicant have been the true and first discoverer. And the words of the first section are susceptible of the same construction. The things sought to be patented must be something "not known or used" by others before, but must be first known or first used by the person claiming to be the inventor; that is, others must not have known or used it before his discovery. Upon any other construction, if a party were the true and first inventor, yet if, before his application for a patent, another were to know his invention or

use it, piratically or innocently, the first inventor would be ousted of his right to a patent, which is inconsistent with the spirit of the act. Construing therefore the first section by the sixth, it seems to me, that the true meaning is, that the first inventor has a right to a patent, though there may have been a knowledge and use of the thing invented by others, before his application for a patent, if such knowledge or use was not anterior to his discovery.

But however this may be, I am clearly of opinion, that if the inventor dedicates his invention to the public, he cannot afterwards resume it, or claim an exclusive right in it. It is like the dedication of a public way, or other public easement. The question, in such cases, is a question of fact, Has he so dedicated it? I agree his acts are to be construed liberally; that he is not to be estopped by licensing a few persons to use his invention to ascertain its utility, or by any such acts of peculiar indulgence and use, as may fairly consist with the clear intention to hold the exclusive privilege. But if the inventor proclaims his intention to all the world, and suffers it to go into general and public use, without objection; if he asserts no exclusive right for years, with a full knowledge that the public are led by it to a general use, such conduct, in my judgment, amounts to strong proof, that he waives the exclusive right, and dedicates the invention to the world. After such conduct, the attempt to regain the exclusive right, and secure it by a patent, would operate as a fraud upon the public; and would hold out inducements to incur heavy expenses in putting inventions into operation, of which the party might be deprived at the mere will or caprice of the inventor.

If the jury believe the evidence in the present case, it seems quite decisive But of that they will judge.

Verdict for defendant.