**WINCHELL** *against* **LATHAM**, executor of Porter.

Where the testimony before a jury is contradictory, and the character and credit of witnesses are in question, a new trial will not be granted on the ground that the verdict is against the weight of evidence.

ASSUMPSIT, tried at the *Oneïda* circuit, *April*, 1826, before WILLIAMS, C. Judge.

The action was on three promissory notes, dated respectively *January 21st, April 21st,* and *November 13th,* 1823, the last for $2100, 20, made by the testator and payable to the plaintiff.

After the plaintiff had proved the handwriting of the testator to the several notes, the parties went into evidence touching the consideration of the large one, which, with the points arising upon it, and the other matters material to the questions decided, will be found stated in the opinion of the court.

Where a witness is introduced by a party, and is interrogated as to a particular fact, and the opposite party, on cross-examination, asks him generally, if he ever communicated that fact to any one, and to whom? and he answers that he communicated it to the party calling him; this does not entitle the party calling him to pursue the inquiry as to his own reply, and other conversation with the witness at the time of the communication.

The jury found for the plaintiff, with $2468,44 damages.

A motion was now made, in behalf of the defendant, for a new trial.

*W. H. Maynard,* and *T. J. Oakley,* for the motion, cited 1 *John.* 139 ; 3 *id.* 506 ; 7 *id.* 341 ; 4 *id.* 235 ; 3 *id.* 199 ; 13 *id.* 379 ; 4 *Dall.* 111, 130.

*S. Beardsley* and *G. C. Bronson,* contra.

*Curia, per* SUTHERLAND, J.    The only matter in controversy between the parties, is the note of *November* 13th, 1823, for $2100,20, which purports to have been signed by *Oliver Porter,* the testator of the defendant. There seems to be no doubt of the genuineness of the signature.    But it is contended by the defendant, either that

Otherwise, if the witness be asked, on cross-examination, specifically, whether he made the communication to the party calling him.

*It seems,* that a note given by a devisor, in his life time, to secure a devisee in a will, against the alteration or revocation of the will, is without consideration, and void.

Where the maker, the defendant, sought to impeach a note, by shewing the want of a valuable consideration; and the plaintiff answered by proving a pecuniary consideration; and the defendant replied by evidence of the plaintiff's declarations, that the consideration was not pecuniary, but the note was given upon a special agreement between the parties ; *held,* that it should not be left to the jury, to say whether the note was not sustained by the consideration stated in the plaintiff's declarations, as proved by the defendant.

A plaintiff cannot go to a jury upon two distinct and inconsistent propositions proved by himself, or established by his own proof, in connexion with his declarations as proved by the defendant.

it was obtained from *Porter* by imposition, when he was in a state of intoxication, or that he supposed it to be a small note, probably for twenty-one dollars and twenty cents; and that the word *hundred* was fraudulently inserted by the plaintiff, either before or after it was signed; or if signed with a knowledge of its contents, that it was given without any legal consideration. The body of the note is in the handwriting of the plaintiff.

The real nature of this transaction is involved in great doubt and mystery : and I have seldom had occasion to examine a case, in which I found it so difficult to arrive at a satisfactory conclusion. The witnesses were very numerous, and their testimony extremely contradictory ; and the verdict of the jury must have been very essentially influenced by the general character and appearance of the witnesses, and their manner of testifying. Some of them were directly impeached ; others were shown to have given various and contradictory accounts of the same transaction ; others stood in different degrees of relationship, or connexion with the parties ; and may have been supposed, by the jury, to have testified under the influence of strong prepossessions.

In truth, the case is characterized by all the circumstances which render it peculiarly proper for the determination of a jury ; and, without intending to express any opinion as to the weight or preponderance of evidence, we have no hesitation in saying, that the verdict is not so clearly and unquestionably against it, as to justify us in setting it aside on that ground.

The motion for a new trial must, therefore, be denied, unless the judge erred in the admission or rejection of evidence ; or in his charge to the jury.

It does not appear, from the case, that any exception was taken upon the trial, to any decision of the judge, or to any opinion expressed by him in his charge to the jury. We should be justified, therefore, in refusing to entertain any question in relation to either. But it is not within the recollection of the court, that this objection was taken upon the argument. In a case of so much importance,

Winchell
v.
Latham.

therefore, we will presume that exceptions were in fact taken; and that the formal statement of them was unintentionally omitted in drawing the case.

The first exception relates to the testimony of *Simon Hyde*. He was a witness for the defendant; and, in his direct examination, stated, that in *November* or *December*, 1823, *Winchell* shewed him a note, upon the back of which was written *Oliver Porter's note, for* $2100 *and some cents*, which he believes to be the note in question. *Winchell* was then on his way to *Connecticut*, and the witness asked him how he came by such a note against *Porter* ? *Winchell* replied that he had some money, which he did not wish to carry with him to *Connecticut*; and he had left it with *Porter*, because he knew it would be safe, and that he would not use it.

Upon his cross examination, he was asked by the plaintiff's counsel, if he had ever told any body that he had seen such a note, or that the plaintiff had such a note? and if he had, when and whom ? The witness answered, that the first person to whom he mentioned it, was *Porter, the testator ;* that it was after *Winchell's* return from *Connecticut ;* but how long he could not tell. *The counsel for the defendant then asked the witness what Porter said about the large note when he gave him the information ?* This question was objected to by the plaintiff's counsel, on the ground that the defendant could not give in evidence, the declarations of *Porter* in his own favor; and the objection was sustained, and the question excluded by the judge. The decision of the judge was undoubtedly correct. The witness was not asked whether he had ever *informed Porter* that he had seen the note ? But the question was general, if he had informed *any body, and whom ?* He was *the defendant's* witness; and it is not to be supposed that the plaintiff knew what his answer would be. The question was not, therefore, put with the view or expectation of bringing home to *Porter* knowledge of the existence of the note ; but for the purpose, probably, of testing the accuracy of the witness, by compelling him to name the individuals to whom he had communicated the

fact, if any ; so that they might be called to corroborate or impeach him.   The disclosure, therefore, came out accidentally ; and did not lay the foundation for a course of inquiry which the defendant had not a right to pursue upon the direct examination.   Occurrences of this sort are not only common, but inevitable in almost every trial.   It is impossible to anticipate what the answer of a witness will be, to a general question, until his answer is given. If it is of a nature which would have been inadmissible upon a direct and specific inquiry, the course is, not to permit the inquiry to be pursued, and the evidence to be repelled by other testimony ; but to exclude the answer from the consideration of the jury, so far as it was improper to have been given.   There is no danger of a jury being misled or prejudiced by such a circumstance.   The presiding judge will explain to them why they are to disregard the evidence ; and that no inference is to be drawn from it against the opposite party, because he is precluded from pursuing the inquiry, and explaining it.   If the plaintiff's counsel had asked specifically, whether the witness ever communicated the information in relation to the note to *Porter*, what *Porter* said on that occasion would probably have been competent evidence ; for the inquiry could have been made with no other view, than to raise the presumption of his admission of the genuineness and validity of the note ; and that presumption the opposite party, of course, ought to be permitted to repel.   The question would be considered as embracing, not only the information communicated by the witness to *Porter*, but *Porter's* answer also ; and the answer would then be evidence against the plaintiff, having been called for by him. But there would be no safety in putting a general question to a witness upon his cross examination, if his answer might be the means of rendering the declaration of the opposite party evidence in his own favor, without being called for by his antagonist.

The remaining objections are to the charge of the judge.

The first exception is unfounded in fact. It is, that the judge erred in not charging the jury, when required so to do, that if the note of $2100,20, was given as a security for the will made by *Porter*, the testator, in favor of the plaintiff, it was not given on a good legal consideration ; and that, therefore, the plaintiff could not recover upon it. The defendant submitted that proposition in writing to the judge, and requested him so to charge the jury. And he did expressly charge them, that the legal proposition, so submitted by the defendant, and which he repeated to the jury, was well founded in law ; and that it was for the jury to decide whether it was or was not applicable to the state of facts in the cause. That is, if they believed, from the evidence, that the note in question was given by *Porter* to the defendant, as a security or guaranty against *Porter's* cancelling or altering his will, by which he had devised his farm to the plaintiff, then the plaintiff could not recover on that note ; the consideration being one which would not support such a promise. The charge, on this point, is unexceptionable.

The next point taken, is, " that the judge erred in charging the jury that the plaintiff could recover, if the note was given for any other consideration than the one the plaintiff had attempted to prove."

The course taken upon the trial, was this : the plaintiff first proved the execution of the note ; and that he had worked for *Porter* for about a year, at $1 per day, and had paid and advanced several small sums of money for him. He then rested ; and the defendant proceeded to impeach the note, by proving the declarations of the plaintiff, about the time when the note was given, which went to show that he then claimed only a small sum as due from *Porter*. 2. By showing, that from *Porter's* circumstances in life, and means of living, and habits of business and industry, it was extremely improbable that he could have contracted so large a debt. That the productions of his farm were nearly, if not quite sufficient to support his family ; and that he studiously avoided contracting debts ; and that his representatives found no money among his effects af-

ALBANY,
Feb. 1827.

Winchell
v.
Latham.

ter his death.   3. By proving the declarations and admissions of the plaintiff, that the note was given for *the security of the will,* as he expressed it.   To these declarations, several witnesses testified ; *Noah Clark, Israel Phelps, Jesse Carpenter, Solomon Stockwell* and *Robert Eells.*

The defendant then rested ; and the plaintiff called witnesses to prove that this note had been recognized and admitted by *Porter.*   That it was composed of several smaller notes,  one of $500, one of $450, and several others, the amounts of which were not recollected by the witness ; and $450 in cash; and a book account, &c.   That he repeatedly declared that he owed the plaintiff money, and offered his farm for sale ; and demanded $2000 down ; and then told the plaintiff, he being present, that if he sold his farm he would pay him.   On other occasions, he declared he owed the plaintiff a great deal of  money, as much as his farm was worth ; and that he could not pay him without selling his farm.

Thus, the effort on the part of the plaintiff, was, to sustain the note, by proving an actual pecuniary consideration for it ; either  by express proof of that fact, or by implication, from the acknowledgment and recognition of the note by *Porter.*   He did not pretend that it was given for any other consideration ; and all the  evidence on his part was intended to repel and rebut the  evidence given on the part of the defendant, the object of which was to  show,  either that the note was fraudulently obtained, or altered by the plaintiff ; or if not, that it was given as a guaranty against the change of *Porter's* will.   All the evidence as to the latter point,  consisted  in the proof of the plaintiff's declarations and admissions.  The plaintiff, of course, gave no evidence in support of that allegation.

Upon this state of the evidence, after the counsel for the defendant  had submitted  the written  legal proposition to the judge, which has already  been stated ;  the plaintiff's counsel also submitted a proposition, upon which they asked the judge to  instruct the jury.   It was, " that if, from the facts in the case, the  jury believed, that the plaintiff, having  the will  of *Porter* in his favor, was apprehensive

that *Porter* might will the farm to some one else ; and was, *therefore, about to leave him ;* and that *Porter*, to induce him to remain with him, and labor for him while he lived, gave him the note in question ; and that the plaintiff faithfully performed that agreement on his part ; that it was a sufficient legal consideration for the note ; and if they believed that the note rested wholly upon this consideration, or upon this, coupled with a pecuniary consideration, as to a part of the amount, that the note in either case was founded upon a sufficient legal consideration." In relation to this proposition, the judge remarked to the jury, that it was substantially correct ; and that they were to consider whether the note had been given upon a full and valuable consideration, either for money due, or money and services rendered, *or to be rendered,* by the plaintiff for *Porter, or on the consideration stated in the proposition, submitted by the plaintiff's counsel, which was supported, the judge observed, by the evidence to be drawn from the confessions of the plaintiff, compared with other evidence.* And if they should be of opinion, from the evidence, that either of the considerations alluded to was the consideration of the note, and that the plaintiff had performed what he had undertaken on his part, and that no fraud or imposition had been practiced by the plaintiff, in obtaining the note, then it was supported by a sufficient legal consideration ; and the plaintiff would be entitled to their verdict.

It appears to me, that this charge was calculated to mislead the jury. There was not a particle of evidence that the note was given upon the consideration mentioned in the plaintiff's proposition, to wit : that *Porter*, having made his will in *Winchell's* favor, and *Winchell* being apprehensive he would change it, was about to leave him ; and that *Porter* then, to induce him to remain and work for him as long as he lived, gave him the note in question. It will be perceived that the previous will had nothing to do with the consideration supposed. And all that relates to it might be expunged without affecting the legal character of the proposition. It is neither more nor less than this : that if *Winchell* agreed to live with, work for, and

take care of *Porter* during his life, and in consideration thereof, *Porter* gave him the note for $2100, and *Winchell* performed his part of the agreement, there was a good consideration for the note.    Now there was not a particle of evidence of any such agreement or contract.    The confessions or declarations of *Winchell*, as proved, were, *that the note was given to secure the will*, or for fear *Porter* would alter his will, and cheat him out of his property, and earnings.

But the judge also charged the jury that this consideration was supported *by the evidence to be drawn from the confessions of the plaintiff*, as proved on the part of the defendant; thus making the plaintiff's own confessions and declarations evidence to support a consideration, totally different from that which he had endeavored, during the whole course of the trial, to prove was the true consideration; and which he had produced witnesses to support by their oaths.    If the consideration for this note was not entirely pecuniary, then *Benjamin Shattuck*, the principal witness for the plaintiff, was guilty of the most gross and deliberate perjury; and must have been suborned by the plaintiff himself.    Can a party be permitted to go to a jury upon two distinct and entirely contradictory and irreconcilable grounds ?  Suppose the plaintiff had first proved that the note was given upon a pecuniary consideration; but apprehensive, from the evidence given by the opposite party, that his witnesses would not be credited, had then called another lot of witnesses, who testified that it was given upon the contract or agreement which has been supposed : in the first place, would he have been permitted to do it? and if he had been, should the jury have been instructed, that either of the considerations proved, would support the note?  Ought they not rather to have been charged, that the witnesses effectually destroyed each other; and that neither were entitled to credit ?  That the plaintiff, by taking two contradictory grounds, had deprived himself of the benefit of both ?  Can the declarations of the plaintiff himself, when proved by the defendant, be more available to the plaintiff than

the same facts would be, if the plaintiff himself had established them by competent evidence? If the plaintiff had acquiesced in the evidence given by the defendant, as to the consideration of the note, and had reposed himself upon it as a legal consideration, there would have been no objection to it. But instead of that, he denies that that was the consideration; and produces a multitude of witnesses, to establish another and entirely different one. He maintains, and he labors by his evidence to prove, that the declarations which he is shown to have made as to the considerations, were false; and yet the jury are instructed that if they believe those declarations, the plaintiff is entitled to recover.

Under these circumstances, the case appears to me to bear a strong analogy in principle to that class of cases in which it has been held, that, where the consideration is set forth in a written contract, evidence to show that a greater or different consideration was intended, is inadmissible. (1 *John.* 139. 3 *John.* 506. 7 *John.* 341. 2 *W. Bl.* 1249.) That rule, it is true, is founded on the established doctrine, that a written contract cannot be contradicted or varied by parol. But so far as that doctrine has any foundation in moral principle, independent of considerations of public policy, it is this: that a party shall be concluded by his own solemn declarations, and shall not be permitted to prove that what he has once declared in writing was the sole consideration was not so. With how much more force does the principle apply to a case, where that declaration is made by the oaths of moral and responsible beings, in the presence of God and man, swearing by the procurement, and at the instigation of the party himself; and where the contradictory evidence consists of his own declarations and confessions? To permit those declarations under such circumstances to be used in this way, appears to me to be subversive of all morals.

In this respect, therefore, we think the judge erred; and that a new trial must be granted.

New trial granted.