## Case No. 217.

### ALLEN v. BLUNT.

[2 Woodb. & M. 121;[1] 2 Robb, Pat. Cas. 530.]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

EVIDENCE — OFFICIAL CORRESPONDENCE — RES GESTÆ — RES JUDICATA — DEPOSITION — PATENTS FOR INVENTIONS — RENEWAL — NOVELTY — PRIOR USER — DAMAGES — JURY — NEW TRIAL — BILL OF EXCEPTIONS.

1. In a motion for a new trial; because an official letter from the commissioner of the patent office on an official matter was admitted as evidence, tending to prove the time of making the invention, there is some analogy to justify its admission after proving its signature as official correspondence, and also as a declaration made at the time containing [concerning] a particular act, as part of the res gestae; and though its competency may be questionable,

[1][Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

if subsequent evidence in the progress of the case rendered it unnecessary to prove the fact for which it was offered, a new trial will not be granted on account of its admission.

[Cited in Tufts v. Tufts, Case No. 14,232; Carr v. Gale, Id. 2,435; Jewett v. Cunard, Id. 7,310; Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 26 Fed. Rep. 601.]

2. So it will not be granted, where parol evidence was offered of the contents of a former letter, and rejected, because no satisfactory proof was first furnished to the court of the loss of that letter, or its having come to the possession of the opposite party. Courts will receive the affidavits of either party, to establish or rebut such preliminary facts, to be proved to them.

[Cited in Tufts v. Tufts, Case No. 14,232; Carr v. Gale, Id. 2,435; Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 26 Fed. Rep. 601; Richardson v. Hicks, Case No. 11,783.]

3. Letters put in the post-office are not of course in all cases, and under all circumstances, presumed to have been received, though putting them in, may be using due diligence as to notice by the holders of negotiable paper. But in questions of fact addressed to the court, to lay the foundation of secondary evidence of a written paper, such a letter will not be presumed to have been received, merely from putting it in a post-office, if no answer was returned, and the party, to which it was addressed, makes affidavit it never came to hand.

4. A former verdict between these parties on an issue out of chancery in a bill in which an injunction was prayed for against the further use of a patent, and a trial of an action for damages for its violation, and on an amended specification, seems not to have been a trial of the same matter, and if it was, the former is not a bar when no judgment was ever rendered on that verdict, or on the merits of the bill, praying an injunction, the bill having been dismissed on the plaintiff's own motion.

5. A deposition should not be taken during the session of the court, at which the case is to be tried, except by its order or consent of parties, or taken merely de bene esse in case of death or absence abroad.

6. When counsel have acted publicly in former trials of a like cause, between these parties, and are still employed, though not one of the counsel, whose name appears on the record, if living within a hundred miles of the place where the deposition was taken, he ought to be notified.

7. It is doubtful whether a caption is not insufficient by describing the action as against one, when it was against two, and so entered and defended, though with service since only on one. If the ruling had been erroneous, no new trial is proper when no injury resulted, as the minutes of counsel containing the testimony of the witness on a former trial went to the jury, and, for aught which appeared, contained all that was material in his deposition.

8. A renewal of a patent by the commissioner with an amended specification, is presumed to have been made legally, that is, to correct a mistake or inadvertence, and for the same invention.

[Cited in Woodworth v. Edwards, Case No. 18,014; Morris v. Royer, Id. 9,835; Aultman v. Holley, Id. 656.]

9. But this presumption may be rebutted by evidence, and if so, it should be submitted to the jury when requested to decide as a fact, whether the last letters issued for the same invention.

[Cited in Morris v. Royer, Case No. 9,835; Aultman v. Holley, Id. 656.]

10. Under the acts of 1836 and 1839, the earliest invention is to prevail over any subsequent one, unless it was allowed to go into public use, or be on sale for two years before taking out a patent, in all trials where no point is made of a subsequent inventor having perfected and patented his invention, while the other neglected to use due diligence to complete his.

11. An invention, to be valid as the first, must be seasonably reduced to practice, and put in use.

[Cited in Wood v. Cleveland Rolling Mills, Case No. 17,941.]

12. A patentee, who uses certain words in his specification, and then takes out an amended one, omitting them, is not estopped by those words, after being thus withdrawn.

13. Where the plaintiff makes out a prima facie case for the violation of his patent, and then the defendant goes forward to prove his special defence under a notice, that the invention had been known and used at divers places by divers persons, it is right to instruct the jury, that on this defence it is the duty of the defendant to turn the scales of evidence in his favor.

14. To indemnify a patentee in damages, the jury may allow actual cost in suits relating to it, and also counsel fees, if reasonable in amount; and this court, under the act of congress, will award treble what is found by the jury as damages, if deemed proper to protect useful inventors from combinations and ruin.

[Cited in Parkhurst v. Kinsman, Case No. 10,761.]

15. If one of the jury, before retiring, publicly inquire as to a particular fact on the records of the court, and no objection being then interposed by counsel on either side, it is publicly answered by the clerk, it cannot be taken advantage of by a motion for a new trial after a verdict is returned.

[Cited in Parkhurst v. Kinsman, Case No. 10,761.]

16. Damages in cases of this kind and of torts, where the jury passed on them fairly and legally, will not be considered excessive, unless they clearly exceed what is necessary to indemnify the patentee; and a court will not set aside a verdict for such excess, unless large and palpably unreasonable. When a motion for a new trial is not drawn up for some weeks, and the counsel disagree as to some of the rulings made, the court must settle the differences, and will not award a new trial on account of them if no injustice seems on the whole case to have been done by the verdict.

[Cited in Jay v. Almy, Case No. 7,236.]

17. Nor when such is the result will the court allow a new trial, if the counsel believe that in his argument he expressed a wish for the court to instruct the jury on some points, and it was not done, but furnished no written list of the instructions desired, nor stated verbally, after the charge was through, and before the jury retired, that any point had been omitted, or any further directions were desired.

18. It is not the duty of the court to instruct the jury on abstract or irrelevant questions, but only such as arise on the evidence in the case; and though, as general rules, new trials are granted for the admission of evidence not competent, or the rejection of what is legal, or for a misdirection in point of law, yet by well established exceptions, in the exercise of a sound discretion, this is not to be done, if in the course of the trial the evidence became immaterial, or on the whole case, notwithstanding some erroneous ruling or instruction, the verdict does not seem to have been influenced by them, or to be against the justice of the cause.

19. A motion for an allowance of a bill of exceptions, under the authority given by the patent act to this court in all cases under it, where it seems "reasonable," in order to enable the parties to carry questions contained in it to the supreme court, when the damages are less than $2,000, ought to be granted in the exercise of a sound discretion, as to cases involving points, which arise in the construction of the patent law itself, where those are important in their character and really doubtful, but as to no cases involving points of a different character.

[20. Cited in Russell v. McLellan, Case No. 12,158, as authority for permitting a departure from the rule requiring notice and written interrogatories to be filed with the clerk before depositions can be taken.]

[21. Cited in Aiken v. Bemis, Case No. 109, to the point that the damages allowed by the jury must be plainly exorbitant to require the interference of the court.]

At law. This was an action on the case [by Ethan Allen against Orson Blunt and others] for a violation of a patent right for a self-cocking pistol. The suit was instituted September 2, 1844, and counted on a patent [No. 461] issued for the last time on the 3d of August, 1844, but which had originally issued, November 11, 1837, and been surrendered and cancelled for a defective specification, January 15, 1844, as well as again August 3, 1844. The plea was not guilty, accompanied by notices of a prior knowledge and use of the same modes of constructing locks to fire-arms, in various places and by various persons, that need not be recapitulated. The writ was served on Blunt only, and the cause came on for trial here in June, 1845, when the jury disagreed. It was tried again in June, 1846, and after ten days spent in putting in the testimony, and in arguments of counsel, was submitted to the jury, and a verdict returned for the plaintiff for $1,200 damages. In the progress of the trial, several rulings were made of disputed questions on the admission of evidence, and the jury were instructed on certain points of law connected with the case. But a bill of exceptions was not then filed by the counsel for the defendant, from an impression that, as the damages were less than $2,000, the case could not be carried up to the supreme court by a writ of error.

A motion for a new trial, however, was made, and the reasons assigned for it were filed, July 14, 1846, a copy of which follows: "And now, after verdict, defendants move the court here for a new trial, and assign the following causes. 1. Because the court, notwithstanding the objection of defendants, allowed the plaintiff to read in evidence a certain letter, purporting to have been written and addressed by one Ellsworth, assuming to be commissioner of patents, bearing date the 15th July, 1837. 2. Because the court refused to allow defendants to read in evidence and exhibit a portion of the deposition of one William H. Elliot, in relation to his said Elliot's having transmitted to plaintiff a certain letter and certain drawings of pistol locks, copies of which were annexed to said deposition, on the ground that the plaintiff by his affidavit denied the receipt of any such letter and drawings. 3. Because the court refused to permit defendants to give in evidence the record of the proceedings, verdict and final disposition of a suit in equity between the plaintiff and defendants in the state of New York, touching the same subject-matter, which is at issue in this suit. 4. Because the court refused to permit defendants to read in evidence the deposition of Samuel Colt, taken by said defendants in and for said suit. 5 Because defendants' counsel having insisted that the first letters patent were for another and different invention from those claimed in the second and third letters patent, the court ruled as a matter of law, that the re-issue by the commissioner of patents to plaintiff of the two letters by him obtained upon surrender of his first and of his second letters patent, was conclusive that all said letters were for one and the same invention. 6. Because the court, having permitted the plaintiff to introduce evidence as tending to show that plaintiff, several years prior to his first application for letters patent therefor, did invent and put in use the invention claimed by him and set forth in said letters patent, did thereupon rule that although the same invention had subsequent to plaintiff's making his said invention, and before his making his said application, been made and put in use by Elliot or any other persons, yet the plaintiff's patent would still be valid. 7. Because the court, although requested by defendants' counsel, omitted to instruct the jury as matter of law, that unless they should find that plaintiff had not merely first discovered, but first reduced to practice, and put to use his said invention prior to the discovery, and putting in use by others of the same invention, the plaintiff's patent would be void. 8. Because the court did not instruct the jury as matter of law, though requested by defendants' counsel, that plaintiff was estopped as against defendant and the public by his first letters patent from asserting that the mode of disengagement of the slide trigger does not constitute a substantial difference between the lock of plaintiff and a lock disengaged in the mode of detaching such slide trigger. 9. Because the court omitted to instruct the jury, though requested by defendants so to do, that if plaintiff made his said invention in 1833, and reduced the same to practice, yet if he concealed the same, and did not apply for letters patent until July, 1837, the letters patent thus obtained would be void in case of a subsequent similar invention reduced to practice, and put in use prior to said application for letters patent; but instructed the jury that if they should be satisfied that plaintiff made his said supposed invention in the year 1833, and reduced it to practice, but did not apply for letters patent therefor until July, 1837, yet that plain-

tiff's patent was valid. 10. Because the court instructed the jury, that if plaintiff had made out a prima facie case of originality of invention, and of a violation of his patent by defendants, the evidence on the part of defendants to entitle them to a verdict, must be sufficient to turn the scale; that if defendants impugn the originality of the invention, or the similarity of the instruments, they must offer such evidence as shall render it probable that plaintiff was not the first inventor, or that the machines are not similar. 11. Because the court instructed the jury in relation to damages, that they were at liberty to include therein the costs and expenditures of plaintiff in conducting this suit, other than and besides the costs by law taxable therein. 12. Because the jury were permitted, upon the question of damages, to inquire of the clerk and ascertain what damages had been given in two other patent cases that had been tried in said court. 13. Because the damages assessed by the verdict were without evidence, against the evidence and the weight of the evidence, and are also excessive."

At the adjourned session of the court, held in September, 1846, the new motion was made for leave of the court, then to file a bill of exceptions, embracing some of the causes assigned for a new trial, in order to carry the case up by a writ of error under the special provision as to the subject of allowing writs of error in all patent cases when deemed reasonable by the court under the 17th section of the patent act of July 4, 1836. This motion was made without abandoning that for a new trial, in case it should not succeed; and both were argued at the September session. [Motions refused, and judgment entered on the verdict.]

Bartlett and C. G. Loring, for the motions. B. R. Curtis and Choate, opposed.

WOODBURY, Circuit Justice. The counsel for the defendants have assigned reasons for these two motions, which undoubtedly seemed to them well founded in fact, as well as sufficient in law. But the trial having ended June 24, 1846, and these reasons not having been filed till July 15, 1846, twenty-one days after, and when the court was not in session, they are open to greater chances of mistake, and cannot so easily and satisfactorily be corrected, if erroneous, as when filed near the time of the trial. The reasons for the delay, however, are satisfactory; but do not lessen or remove at all the difficulties produced by it. These have still got to be met, and having listened to the respective views of the counsel on both sides as to the facts and the law involved in these motions, I shall now proceed to perform my further unpleasant portion of duty in respect to them, by deciding first, what it appears to me actually took place at the trial in connection with each point, and next, whether it

furnishes a reasonable ground for a new trial, or the allowance of a bill of exceptions under the special provision of the 17th section of the patent act. There are thirteen reasons assigned for the new trial, and it will be more convenient, intelligible, and useful in examining so many, to consider them in relation to a new trial, separately from the motion for a bill of exceptions.

1. The first one is the admission of a letter from the commissioner of patents, which was objected to by the defendants. There is no difference of views between the counsel as to the ruling of the court on this point having been as stated. But the letter was admitted merely as evidence to prove that as early as the 15th of July, 1837, the day of its date, the plaintiff had made this discovery in fire-arms, and applied to the patent office for a patent for it. This letter was an acknowledgment of such an application. I entertained doubts at the trial whether the letter must not be regarded like that of any third person not a party, and hence was not so good evidence as his statements under oath as a witness. But it may be, that coming from a public officer under an official oath and on official business, it is competent as an official act and document of a public officer in relation to such a subject; and being duly proved as to its signature, there is some analogy for making it competent evidence for the jury to weigh in deciding whether the invention of the plaintiff had not at that time been completed. If copies are admissible in such cases on general principles, a fortiori are the originals. The rules as to admitting official correspondence to prove official facts in this manner in certain cases may be seen in 1 Greenl. Ev. p. 359, 554; [Hatten v. Speyer,] 1 Johns. 38–41; [Talbot v. Seeman,] 1 Cranch, [5 U. S.] 1, 37, 38. Another principle, urged at the hearing, though not at the trial, in support of the admission of this letter is, that it was a part of the transaction, when the plaintiff applied for a patent. And being made at the time and in relation to that subject is a competent declaration, as a part of the res gestae and explanatory of what took place. [Philadelphia & T. R. Co. v. Stimpson,] 14 Pet. [39 U. S.] 448; [Rawson v. Haigh,] 2 Bing. 102; [Forman v. Jacob,] 1 Starkie, 46; 1 Greenl. Ev. 120, 122. This is certainly plausible as to any letters then written by the plaintiff, or declarations then made by him. But whether these should not be proved by witnesses, may be questionable, and if the person with whom he was thus dealing is a competent witness, as Mr. Ellsworth is, for aught which appears, it would seem that his testimony is more proper evidence of what the plaintiff said or did than his letter, unless, as before remarked, that letter coming from a public officer, and under oath in respect to an official matter, be legal evidence as to that matter, in the light of a public document or record to prove it, and not as

a mere private letter admitted for being a part of the res gestae. But there is another circumstance connected with this testimony, which seems decisive against the objection to its admission. It is to be remembered in considering both of these motions, that they are not matters of right as to being granted, but the discretion of the court is to be exercised; and if, in the hurry of a trial, a direction was erroneous, but afterwards became immaterial or unnecessary in consequence of other evidence, a new trial ought not to be granted. See on this, Greenleaf's Lessee v. Birth, 5 Pet. [30 U. S.] 132; [Thorndike v. City of Boston,] 1 Metc. [Mass.] 242. Now it is certain, that the letter of the commissioner was admitted to show an invention of this lock by the plaintiff, he having applied for a patent for it as early as July, 1836. But in the chain of proof on this subject, evidence was subsequently offered, proving an invention of it by the plaintiff by having made arms, or caused them to be made with this lock on them, several months earlier. By that, therefore, the date of the application, as shown in this letter, became of no importance for this purpose, and there is no pretense or suggestion that the date was in truth erroneous, and would not be sustained by the commissioner as a witness, if placed on the stand. This ground for a new trial, therefore, cannot be sustained.

2. The next objection relates to the ruling of the court, that a portion of a deposition by Wm. H. Elliot, as to the contents of a certain letter, could not be read. It is alleged to have been excluded on the ground of the plaintiff's denial that he received any such letter. But there is a mistake in part as to this. It is true, that the court decided against the competency of a portion of Elliot's deposition, but it was because it went to prove the contents of a written paper and drawings of pistols, which paper and drawings were not first shown to be lost, nor in the possession of the plaintiff with notice to produce them. The fact, that he wrote letters to him at a particular time, and on the subject of pistols, was not ruled out, as may be seen by looking at the deposition filed in the case, and the marks now existing on what was deemed inadmissible. They were only as to the particular contents of the letter and drawings. These were ruled out till the usual previous proof was given of the loss of the originals, or of their being actually in the possession of the plaintiff, and notice given to produce them. The correctness of such a ruling is sustained by all the books on evidence, and rests on the familiar principle, that a resort will not, as a general rule, be allowed to parol or secondary evidence of a fact, when written, or higher evidence exists and may be obtained. The defendant then gave notice to the plaintiff in court to produce the letter and drawings, and the plaintiff thereupon filed his affidavit, that no

such letter had ever been received by him. Another question thus arose and was decided by the court, whether the defendants had offered to the court, not the jury, satisfactory proof to justify it in point of law in the admission of parol evidence to the jury of the contents of that letter and drawings. Nothing had been offered to the jury to weigh on this point, and nothing could be by law, except the original letter itself and the drawings, until proof was furnished to the court that they had been lost or had gone into the plaintiff's custody. [Tayloe v. Riggs,] 1 Pet. [26 U. S.] 597; [Page v. Page,] 15 Pick. 374; [Jackson v. Frier,] 16 Johns. 193; Woods v. Gassett, 11 N. H. 445; Schermerhorn v. Schermerhorn, 1 Wend. 123. Nobody testified to these last facts. The deponent swore he sent the letter, rather than delivered it. If sent by a private hand, then the person carrying it could testify whether it was delivered or not to the plaintiff. If sent by mail, then, where notice is to be brought home to the correspondent, the letter must be shown to have been received, and the more especially, where the correspondent denies under oath to the court that it ever was received. Carpenter v. Providence Washington Ins. Co., 4 How. [45 U. S.] 185.

It is a mistake to suppose that in case of letters, put in the mail to give notice of demand of commercial paper and non-payment, the law considers it sufficient on the presumption that the letter is always received. But it is on the fact, that writing and doing so are using due diligence to give notice. If such a presumption of the receipt of letters put in the post-office, is to be made in all cases, it is a presumption, contradicted daily by the immense dead letter collections never received by correspondents, and requiring the constant employment of several clerks to overhaul and dispose of, in our own general post-office alone. But however that may be, this letter was not proved to have been put in the post-office at all, and the proof addressed to the court, and the contradiction by the oath of the plaintiff's and Elliot's own testimony, that he never got any reply, failed entirely to convince me that the letter was ever received by Allen. That a party, before being allowed to give secondary or parol evidence of the contents of a writing, supposed to be in the possession of the opposite party, must first prove to the court the possession of it as well as the notice, may be seen in the following books. 1 Greenl. Ev. 597; [Henry v. Leigh,] 3 Camp. 499; [Jackson v. Frier,] 16 Johns. 193; [Tayloe v. Riggs,] 1 Pet. [26 U. S.] 597. This may be done by the affidavit of the party, and be disproved by like affidavits of his opponent, and interrogatories be put in the discretion of the court, to each by the other, if desiring it and pertinent. Woods v. Gassett, 11 N. H. 447. For it is all addressed to the court and not to the jury, and it is weighed under liberal views rather than technical scruples,

and in connection with all the other evidence and circumstances bearing on the point. Tayloe v. Riggs, 1 Pet. [26 U. S.] 596; Schermerhorn v. Schermerhorn, 1 Wend. 123. Were it necessary to go farther on this objection, it would be seen that the evidence thus rejected became, likewise, immaterial; because it related to a communication of certain drawings by Elliot to Allen at a particular date in the summer of 1837, in order to show that Elliot was then the inventor before Allen; whereas Allen afterwards proved that on two occasions, both some time previous to that date, he had caused locks of this kind to be made.

3. The next ruling of the court was, not admitting in evidence the former verdict and proceedings between these parties in New York. My predecessor, on a former trial of this cause, considered this question, and gave an elaborate written opinion against the admission of this testimony. 3 Story, 742, [Allen v. Blunt, Case No. 216.] I have examined it with care, and feel satisfied it is correct, unless in point of fact the judgment of the court in New York, dismissing the bill, was a judgment made on the merits, and grounded on this very verdict. That court on its law side may not have saved questions, or ordered a new trial as to that verdict. But something still more than that fact is necessary to give it "vitality and finality," and that is judgment, actually rendered upon and enforcing the verdict. [Hopkins v. Lee,] 6 Wheat. [19 U. S.] 113. The bill in chancery, to aid which this verdict was taken, was dismissed. But that is an equivocal act unless explained. Dismissing bills is sometimes done for want of prosecution, and is then like a nonsuit in a court of law, which is of course no bar, nor competent evidence to affect a subsequent suit. Sometimes it is by agreement, without any examination or action on the merits by the court itself. Jenkins v. Eldredge, [Case No. 7,266.] Sometimes it is done to enforce an order or rule of the court, and not to bar the party from a subsequent prosecution, and sometimes it is a judgment on the whole case, and is then meant to settle fully the rights of the parties. Sibbald v. U. S., 12 Pet. [37 U. S.] 492; [Martin v. Hunter's Lessee,] 1 Wheat. [14 U. S.] 355; Hopkins v. Lee, 6 Wheat. [19 U. S.] 113–116. When it is of the latter character, it is usually pleaded in bar to a subsequent proceeding, and averments are made, that the dismissal was on the merits. But if it is not so pleaded and averred, and is only offered in evidence, then the evidence dehors the record, if not in it, should accompany the record, and prove all which is proper to show that the dismissal was the result of a judicial inquiry and disposal of the rights of the parties involved in the proceedings and verdict. See Aspden v. Nixon, 4 How. [45 U. S.] 467, especially cases cited in the arguments. See Burnham v. Webster, [Case No. 2,179.] But aside from these principles, it appears in this case, that before any judgment was rendered on or against this verdict, the plaintiff, on his own motion, had his bill dismissed without any decision on the verdict, or the merits of the case. A mere verdict in any suit does not, as a matter of course, settle the right of the parties. Butler v. Stephens, Walk. [Miss.] 219. It is open, as the verdict in the very case now under consideration strongly illustrates, to numerous exceptions growing out of rulings on evidence that was offered, and opinions or principles involved in the merits, and is open to be set aside for various errors in them, or for misbehavior of the jury, and, as the counsel for the defendants contend in this very case, ought in law and justice often to be set aside, rather than stand and be given in evidence to control or influence other trials between the same parties. But after all the objections to such a verdict have been weighed by the court deliberately, and the court proceeds to pronounce judgment on it, and does pronounce one sustaining it, then it should put an end to further litigation between the parties of the same points involved in that case. It is for public quiet, the interests of the republic to do this, but not to prevent one full decision on the merits between the parties. Again, if the same merits or points once decided are not again agitated in the second suit, then of course the principle in question does not make or allow the first decision, being on different matters, to bind or control the second. [Towns v. Nims,] 5 N. H. 262; Burnham v. Webster, [Case No. 2,179;] Bank of U. S. v. Beverly, 1 How. [42 U. S.] 148, 149. Accordingly, it is further contended in this case by the plaintiff, that if a judgment had been rendered in the first proceeding in New York on the merits, it did not involve the points here agitated. That was an application in equity for an injunction. This is a suit at law for damages for a violation of a patent right. An injunction will not always be granted, though the patent be a valid one. So the specification in the patent then relied on, was not the same as now, and hence that proceeding may have failed on the very objection since obviated by a correction of the specification. There should have been further evidence and explanations on both of these questions before that verdict could safely or properly be allowed to go to the jury. These views are sustained not only by sound reason, but various authorities cited in Aspden v. Nixon, [supra,] and by Judge Story in the present cause; and I do not regard the remarks of 1 Greenl. Ev. § 510, as sustaining a contrary doctrine when applied (as they are understood by me to be) either to the necessity not existing of any judgment at law on verdicts found on issues out of chancery, but leaving the necessity of judgments on them in chancery as imperative, as principle and the precedents just cited require. But it must appear of course,

that the court decided the merits, relying on that verdict, in order to show that the question involved in that verdict has been settled or adjudged on once by a proper tribunal. That is the gist of the principle in its ever being a bar or possessing weight. Bul. N. P. 234; 1 Story, 166, [Magoun v. New England Marine Ins. Co., Case No. 8,961;] [Perkins v. Knight,] 2 N. H. 474. Hence in Willes, 367, note, it is said, there must be a decree in chancery; and that is evidence that the verdict is in force. Gres. Eq. Ev. 109; 1 Grah. N. Tr. 596; 1 Newl. Ch. Pr. 353.

4. The fourth reason assigned for a new trial is the exclusion of Colt's deposition. It · will be recollected that this deposition was taken without giving any notice to the opposite party or his counsel, .and during the sitting of this court at which the cause was to be tried. Such depositions, if admissible at all under the act of congress, are very dangerous in their ex parte character, for the fair trial of the final merits of a cause, and according to the views of this court expressed with much deliberation, are to be very closely scrutinized. Bell v. Morrison, 1 Pet. [26 U. S.] 356. It is there settled, that no presumptions are to be made in aid of evidence taken contrary to common law principles. See, also, [The George,] 2 Wheat. [15 U. S.] 287; [Patapsco Ins. Co. v. Southgate,] 5 Pet. [30 U. S.] 604; 1 Gall. 488, [U. S. v. Coolidge, Case No. 14,857;] 3 Wash. C. C. 408, [Evans v. Hettick, Case No. 4,562;] 1 Brock. 367, [The Thomas and Henry v. U. S., Case No. 13,919.] My own opinion is, that when taken during the session of the court, though over a hundred miles distant, whether with or without notice, they are entirely inadmissible. The admission of depositions, taken in perpetuam rei memoriam, under authority from the United States courts, and those authorized by some states by express statutes in cases of sickness, or going abroad, or old age, are to be used only in case the witness dies, or has not returned; and often in the states notice in these cases must be given to the party likely to be affected by ·them. See Act Sept. 24, .1789, § 30. See statutes in New Hampshire and Massachusetts. It is held in Patapsco Ins. Co. v. Southgate, 5 Pet. [30 U. S.] 616, that when taken de bene esse under the United States statute, as here without notice, they cannot be· used, if the disability is removed. But when the witness lived over one hundred miles distant at the time taken, the opposite side must snow the witness to be now nearer, and that this provision applies to cases of over one hundred miles distant out of the district, as well as within it. 3 Wash. C. C. 409, [Evans v. Hettick, Case No. 4,562.] 3 Wash. C. C. 531, [Bleecker v. Bond, Case No. 1,534,] is against this, and in my view on the soundest reasons, though the other decision being by the supreme court must govern till altered by that court. Here, however, a new prin-

ciple interposes as to a deposition taken while this court is in session.

The party and his counsel, (getting express notice from the other side, or getting none in that way, but learning as they may accidentally when and where the deposition is to be taken, and) anxious as they may be to attend and cross-examine, have a prior and paramount legal duty to perform here in court to attend and be ready for the trial here. This is a duty enjoined by law, and not to be neglected. By a rule in the English courts counsel cannot be required to attend elsewhere during the sittings at Westminster. 1 Tidd, Pr. 57. In Maine the courts usually will not allow depositions to be used, taken during the session of the court, unless in the same place, and when the court is not in actual session, &c. Wyman v. Wood, 25 Me. 439. So, not the day before the court sits. [Ulmer v. Hills,] 8 Greenl. 326. Sed quaere, [Wyman v. Wood,] 25 Me. 440, as to the last. It is only by consent of parties, or discretion of the court under peculiar circumstances, that in ordinary cases of taking depositions, this prior and paramount duty in court should be required to be neglected or suspended, by absence in attending on the taking of depositions. They ought to be all taken, and the case prepared before the term begins. But beside this, the plaintiff had counsel in this case, residing in the very city where this deposition was taken, and though his name was not entered on the record here, he had acted in the former trial, and this was known to the defendants. Furthermore, the names of the parties in this suit are not given correctly in the caption, being described as a suit against Blunt, when it is against Blunt and Simmes, though not served on the latter. It is entered against both, and both plead and defend. Whether for such a variance the witnesses would be exonerated or not, if indicted for perjury, it is an objection, when the proceedings are to be strictly scrutinized as here, not without some weight. The exceptions to the admission of this deposition are the more readily sustained also; because, instead of a continuance to take it over again, the testimony of the witness was still allowed to go to the jury, as given in a previous trial, and contained in the minutes of the counsel on both sides; and if the deposition varied from that, by containing any material and new facts, it was not stated, either at the trial or in the argument of these motions, that in truth it did so vary. My predecessor, in one district of this circuit, made it an invariable rule, if depositions were taken without notice, to allow a continuance to enable the other party to cross-examine the witness, or repel his testimony; and such I understand to be the practice of most of the judges of the supreme court in their circuits. The 68th rule of this court in equity virtually does the same.

5. In respect to the next objection, a supposed ruling by the court, that the different letters patent to the plaintiff for his lock, must in point of law be regarded as conclusively for one and the same invention, the counsel for the plaintiff contend, that no such ruling was made by the court. My own minutes and recollection are, that the plaintiff's counsel in the opening, stated something as to the opinion of my predecessor about the binding force of the doings of the commissioner, unless it was set up and proved that fraud had been practised in procuring the last letters from the commissioner; and that the counsel on the other side expressed doubts as to the correctness of this doctrine. But no attempt was made during the trial to offer any evidence to show that these last letters were not for the same invention, or to show fraud practised on the commissioner in obtaining the last letters, and I can find no minute that my own views on this point were expressed at all. Indeed, in the closing argument for the defendants on this motion, the counsel admit that the court made no such charge or ruling. No doubt, however, exists in my mind that if any direction had been required by the evidence and given, I should have said that in point of law the jury ought, until the contrary was shown, to presume the commissioner, in issuing new letters, had discharged his duty faithfully and correctly. Philadelphia & T. R. Co. v. Stimpson, 14 Pet. [39 U. S.] 458. This involves the idea, that he issued them on account of mistake or inadvertence in the description or specification of the invention attached to the first letters. And therefore that he issued the new ones, as a matter of course, with a different amended description or specification, but for the "same invention," as he is expressly required to do by the thirteenth section of the act. But this prima facie inference or presumption in respect to the identity was open to be contradicted by proper evidence, though if none had been offered, it should stand as a fact, that the invention meant to be described in both, was the same. I entertain the same impressions now, and the correctness of them is fortified by my view of the decision of the supreme court in Stimpson v. Westchester R. Co., 4 How. [45 U. S.] 404. See, also, [Philadelphia & T. R. Co. v. Stimpson,] 14 Pet. [39 U. S.] 458.

Probably my predecessor deemed the decision of the commissioner binding or conclusive farther than I should, and not, as I am informed, to be overturned, either as to the question of mistake in the specification, or as to the identity of the patent, unless fraud was shown, or an error by the commissioner was apparent on the face of the paper. Allen v. Blunt, [Case No. 216.] It is not extraordinary, that no such attempt at counter proof was made; because it is now stated in the argument, that the counsel for the defendant then considered the question of identity as a question of law merely for the court, and asked a ruling of the court on that point, whether as a question of law, after examining the descriptions in the two specifications, the new letters were or were not for the same invention. If I omitted, then, to give such a ruling, which is all contended for in the closing argument, the omission seems to have been right. But had I done what the defendants' counsel now say they wished, that is, given a ruling on the identity as a question of law, and looking to the specification alone, it would have been then, as it is now, against the defendants. On the face of the two specifications, without other evidence, neither a court nor a jury could much hesitate to believe the renewed letters and the original ones were for the same invention. So the commissioner must have meant, and so only had the plaintiff any motive to make them. Because new letters could then with equal ease have been taken out for any new invention; and its use for fourteen years from that date protected by them, instead of only for the residue of the term as in the renewed letters. These last, also, could not operate back on violations any more than new letters. To be sure he uses in the renewed letters words somewhat different from those in the old ones. That he might do this, was doubtless one of the very reasons for obtaining the renewed letters. But it was different language to describe more correctly the same invention, and this was proper. A part of the opinion of my predecessor on those specifications illustrates this point also. Allen v. Blunt, [Case No. 216;] Woodworth v. Stone, [Id. 18,021.] The whole mistake on this matter is perhaps in the defendant's supposition, that the commissioner's renewal was held by me to be conclusive in law as to the identity; because he understood my predecessor to have thought so, unless fraud was shown, or an error on the face of the papers. But from what has been said, it does not appear that the defendant is likely to have suffered from his mistake as to this, so as to justify a new trial for it.

6. The next ruling involves the question, whether under the act of 1836, when the inquiry is, which is the original invention, the earliest is not to prevail over a succeeding one, though a succeeding one may be made, and used before letters patent are taken out for the first. There is no doubt it must prevail as a matter of historical or chronological truth. It is, in truth, the first invention. Is there then any provision in the patent laws which contradicts or annuls this truth? Whatever may be the law abroad, or whatever it may have been here under the act of 1793, or whatever may have been the speculative opinions of writers as to what seems most appropriate, it is clear now, that no act of congress makes delay in taking out a patent fatal to the earliest or first inventor, unless he abandons his discovery to the

public, or, by his "consent," allows it to be put in "public use or on sale" for two years before taking out a patent. Then he forfeits his right in it. See Patent Act July 4, 1836, § 15; (5 Stat. 123;) Act March 3, 1839, (5 Stat. 353.) The plaintiff's patent would be good under the above qualification or the above statutory provisions. The great contest in the present case was, which person in point of fact first invented this kind of self-cocking pistol. There was no pretense that Elliot, the rival inventor, ever actually took out any patent for his supposed invention, or that either of them made, except one or two experimental pistols, or put any others in "public use," or on sale, till the year previous to the patent of the plaintiff, when several were made under the direction of the plaintiff, and not of Elliot. The plaintiff's invention then and thus, if not earlier, became perfected prior to Elliot's completing his. Allen's was also first patented, being the only one patented. Elliot sleeping twenty years after, and taking out no patent, is strong presumptive evidence against him as inventor. 3 Story, 171, [Woodworth v. Sherman, Case No. 18,019;] 3 Story, 754, [Same v. Stone, Case No. 18,021;] 1 Story, 336, [Alden v. Dewey, Case No. 153.] Again, though I have referred to all the statutory provisions now governing this point, there may, under former statutes, have been established a principle like the following. That is, notwithstanding priority in date of an invention, the party must proceed to perfect and patent it, with due diligence, otherwise a succeeding inventor, who is more diligent in perfecting his, though not getting out a patent, may prevail against or defeat him. But there was no attempt here to offer evidence, that Allen was not employed after his invention till his patent, or the year previous, in perfecting and improving his invention, or that he ever dedicated it to the public or meant to; or allowed it to be in "public use" without any patent "for more than two years prior to such application for a patent." See section 7, Patent Act of March 2, 1839. The laws were different in phraseology before these last acts, and the construction of them may be seen in 4 Mason, 108, [Mellus v. Silsbee, Case No. 9,404.] By the act of February 1, 1793, the invention must not have been "known or used before the application" for a patent. They were not so strong as now for the patentee, being now "not known or used" "before the discovery." Yet, under the old law, Judge Story held, "that the first inventor has a right to a patent, though there may have been a knowledge and use of the thing invented by others before his application for a patent, if such knowledge or use was not anterior to his discovery." Mellus v. Silsbee, [Case No. 9,404;] Washburn v. Gould, [Id. 17,214;] Pierson v. Eagle Screw Co., [Id. 11,156.] This he conceded was different from the English decisions on their patent law. But the language and de-

sign of their law in this respect were not like ours. See Hall R. 58; Davies, Pat. 429. He held, that there the use must be such as to show a dedication to the public, (1 Gall. 482, [Whittemore v. Cutter, Case No. 17,601;]) that the use must have been a public use, (Shaw v. Cooper, 7 Pet. [32 U. S.] 292; 1 Wash. C. C. 440, [Russel v. Union Ins. Co., Case No. 12,-147;]) and with his knowledge, (Whitney v. Emmett, [Id. 17,585;] [Pennock v. Dialogue,] 2 Pet. [27 U. S.] 12, 20.) See, also, [Grant v. Raymond,] 6 Pet. [31 U. S.] 248; [McClurg v. Kingsland,] 1 How. [42 U. S.] 202. Hence, whatever may have been thought on this in England, as in Dollond's Case, in the special language of their law, (2 H. Bl. 487,) or by Phillips here, (Ev. p. 395,) before the act of 1839, it is clear under that act and the act of 1836, the intervening use, in order to defeat a prior invention, must be public, and with consent of the inventor, and continue two years. Reed v. Cutter, [Case No. 11,645.] Again, through the whole trial, as well as in his notice, the defendant denied that the plaintiff had made the invention earlier in time than Elliot, and went on the ground, that prior in tempore, potior in re. Hence he could not, without an absurdity, have insisted at the same time, that Allen had invented it first, but abandoned it afterwards to the public. The instruction then, as given, was correct upon the point raised, and on which it was given, and which alone was then under consideration. And no instruction should be given on any other points than such ones. The court, though seasonably requested, is not bound to instruct the jury on points not arising in the case, or on abstract and irrelevant propositions, points not raised by the evidence. [Van Hoesen v. Van Alstyne,] 3 Wend. 75; [U. S. v. McLemore,] 4 How. [45 U. S.] 289; [Doe v. Garrison,] 1 Dana, 35; [Sodousky v. McGee,] 4 J. J. Marsh. 194; McNiel v. Holbrook, 12 Pet. [37 U. S.] 84.

7. This disposes also of part of the seventh objection. The counsel for the plaintiff think an instruction was given, such as was desired under that head with the above explanation, and such is my own impression; and, on the second argument the counsel for the defendant waived this exception.

8. The eighth objection is overruled, because if the law allows a party to withdraw expressions, used in his first specification by inadvertence or mistake, and he does withdraw them, it would involve no little absurdity for the law afterwards to estop him in consequence of the very words which have been withdrawn or cancelled under its permission. The case of Kimball v. Bellows, 13 N. H. 58, is very analogous to this view. It was a case of words, struck out of a count in a declaration, and afterwards attempted to be proved against the plaintiff, as his admissions and refused.

9. The next objection is a supposed omis-

sion by the court to instruct the jury, that if the plaintiff made his invention in 1833, and reduced it to practice, and concealed the same till he applied for a patent in July, 1837, the letters would be void in case that a similar invention was subsequently made, reduced to practice and put in use before he applied. It will be seen, by what has before been remarked under another head, that no question was made at the trial in relation to an use by the public of the plaintiff's patent for two years before he applied for it; and that there was no evidence whatever offered of such a "public" use of any other patent like his. It is also equally certain, that no evidence whatever was offered, or point made, that the plaintiff had invented, and improperly concealed his invention, till another person made and perfected a similar one. But, on the contrary, as before remarked, the contest was, whether he had invented it at all first, and this was inconsistent with any position, that he had invented but concealed it. The latter clause of this objection as to the instruction which was actually given, has before been considered, and, as before explained and limited, was the instruction proper on the evidence.

10. The next objection relates to that part of the charge to the jury, where the court stated, that if they believed in the first instance on the paper evidence, that the plaintiff had made out a case, he was entitled to recover, unless the defendant had in his defence rebutted or overcome it, or, in other words, turned the scales. The sentence, which follows in this objection, shows how the remark about turning the scales of evidence was applied and intended to be understood. It was thus. The plaintiff having made out his case, he stopped, and then the defendant went on and tried to make out a special defence, to overcome the right which the plaintiff had proved prima facie to recover, that is, he tried to "impugn the originality of the invention, or the similarity of the instruments," and of this, as a special defence, notice had been given on the record. It was observed on this by the court, that the defendants, to support that special defence, must, in the language of this objection, "offer such evidence as shall render it probable that the plaintiff was not the first inventor, or that the machines are not similar." The burthen of proof was on him to turn the scales in respect to this new matter which he had attempted to prove under his special notice. All remarks, like this now questioned, are right or wrong as applied or not to a particular state of pleadings, or particular course of trial and evidence. So far as regards these, the notice here was like a special plea in bar, the support of which belongs to the defendant in all cases. He must, in relation to that, after the plaintiff has gone far enough to make out a prima facie case, turn the scales in his own favor, or, in other words, take on himself the bur-

then of proof and discharge it. Thus one of the defences set up in the notice was a use of a like lock abroad in England before the plaintiff's supposed invention, and another was the use of such a lock previously in Westchester county in the state of New York. The idea intended to be inculcated was that the defendant, in respect to these particulars, must render them probable, he must turn the scales, the burthen was on him. If there could be any doubt of the correctness of such a direction in point of law, it will be removed by reading the case of Powers v. Russell, 13 Pick. 76. There is still another view of this matter. If some points in the declaration or claim by the plaintiff were contested, on which the plaintiff had made out a prima facie case, or offered enough evidence to turn the scales in his favor, it may have been suggested that then the defendant must offer enough, standing by itself, to render his position probable, or turn the scales as to that in his favor, else there would not be sufficient to overcome the balance already proved for the plaintiff. But it never was intended, and nothing is offered to show that the jury understood, they were on all controverted points in the declaration, which were common to that and the defence, not to compare in the end all the evidence on both sides, and find for whichever party the whole appeared to preponderate.

11. The next objection is, that the court instructed the jury, they might allow to the plaintiff in damages his actual costs, as well as any taxable cost he had paid in consequence of any violation of his patent, which the defendants had committed. I think so still. The fees of counsel were specially authorized to be allowed by my predecessor, (2 Mason, 119, [Boston Manuf'g Co. v. Fiske, Case No. 1,681,]) though at first he thought differently, (1 Gall. 482, [Whittemore v. Cutter, Case No. 17,601.]) Of course they must be reasonable fees. In cases of actions for breaches of covenants of seizin, where the object is an indemnity for the injury sustained, costs in former suits are not only allowed, but "reasonable counsel fees" beside. Staats v. Ten Eyck's Ex'rs, 3 Caines, 111; Kingsbury v. Smith, 13 N. H. 122; [Pitcher v. Livingston,] 4 Johns. 1; Swett v. Patrick, 12 Me. 9; Beale v. Thompson, 3 Bos. & P. 407; Pitkin v. Leavitt, 13 Vt. 379. The "actual damages" sustained, include all necessary and proper expenses in protecting one's violated rights. And though they should not include "smart money," or what is proper merely for example, they may well embrace everything really suffered by the wrong. 1 Baldw. 328, [Whitney v. Emmett, Case No. 17,585;] Gray v. James, [Id. 5,718;] Whittemore v. Cutter, [Id. 17,601;] Washburn v. Gould, [Id. 17,214.] In the admiralty courts, counsel fees are allowed by way of damages, and in one case $500. The Apollon, 9 Wheat. [22 U. S.] 379. There is no exact

measure of damages, except in cases founded on contracts; and unless patentees are to be fully indemnified for injuries inflicted on them, they are destined in all valuable patents to be broken down by litigation alone. If they can escape that untoward fate now, from which Arkwright and Watts suffered so much at first, and by which Oliver Evans and many others have been ruined, and which the very importance and worth to the world of the property their genius has created, exposes them to only the more, it will be effected solely by giving to them an ample indemnity, a real and substantial, and not a mere technical one for rights, which are sacredly recognized both by the laws and the constitution. Indeed I am prepared, in all cases of wanton and persevering encroachments on the fruits of their honest inventions and labors, to go further, and do what congress, doubtless for this useful purpose, empowered this court to do, and that is, treble the damages, if required for the full indemnity and protection of any wronged patentee. See section 14, of Patent Law of July 4, 1846. This, I understand, has been done here on some former occasions.

12. The next objection on account of the damages is, that the jury were permitted to inquire of the clerk, and ascertain what damages had been given in two other patent cases recently tried here. I am surprised at this objection, when the inquiry was made by one of the jury in the box, in the presence of the court, counsel, and parties, and no objection raised to it at the time, nor any pretence now set up, that the reply of the clerk did not correspond with the record. The proper time to object to the admission of such a question and reply, is that which is conformed to in all other cases of testimony, where the parties and counsel and court are present, and is the time when the question is asked. It is not permissible to acquiesce then by silence, and take the chance of a favorable verdict on the sums stated in former trials, they both having been in this instance comparatively small, and make the objection for the first time after the jury have returned a verdict for a larger sum. It is well settled, that a new trial should not be granted for a cause existing at the trial, but which was not stated or excepted to then. Davidson v. Bridgeport, 8 Conn. 472; Nichols v. Alsop, 10 Conn. 263; [Torry v. Holmes,] Id. 499; [Alsop v. Swathel.] 7 Conn. 500; State v. Hascall, 6 N. H. 352; 1 Wash. C. C. 440, [Russel v. Union Ins. Co., Case No. 12,147;] [Jackson v. Jackson,] 5 Cow. 173; [Wait v. Maxwell,] 5 Pick. 217; [Rice v. Bancroft,] 11 Pick. 469; [Ritchie v. Putnam,] 13 Wend. 524; [Den v. Geiger,] 4 Halst. [9 N. J. Law,] 225; [Worford v. Isbel,] 1 Bibb, 247; [Cannon v. Alsbury,] 1 A. K. Marsh. 76; [Pennock v. Dialogue,] 2 Pet. [27 U. S.] 15. The more especially is this so, when any wrong or misleading of the jury was likely to flow from the objection not

being then made. [Train v. Collins,] 2 Pick. 145; [Brazier v. Clap,] 5 Mass. 1, 4; [Newhall v. Hopkins,] 6 Mass. 350. New evidence may be admitted after a case is closed, and even after a jury has gone out, if no objection is taken at the time. [Jackson v. Tallmadge,] 4 Cow. 451; [Hutchins v. Childress,] 4 Stew. & P. 34; Parish v. Fite, 1 Law Rep. [Car. Law Repos.] 238.

13. The last objection is, that the sum returned by the jury as damages, was excessive. The court, from what had been noticed in respect to the probable damages, did not anticipate so large a sum. But it must be a very aggravated and oppressive case, where the court would feel justified in setting up its own opinion, even if decidedly different from that of the jury as to the true amount of damages in an injury in practical life, and as to business not susceptible of exact proof in its details, but peculiarly lying within the range of the experience and observation of a jury. It must stand, notwithstanding such difference, if the matter was submitted to their "fair judgment." Alden v. Dewey, [Case No. 153.] So nothing was left to the jury to be weighed in estimating the damages which the court, on reconsideration, deems to have been improper. Indeed, my predecessor was inclined to leave a very wide range to the jury on this subject, and hardly exclude any thing at all bearing on it from their consideration. Earle v. Sawyer, [Id. 4,247;] Pierson v. Eagle Screw Co., [Id. 11,156.] Retiring then with what is proper, or not objected to at the proper time, if in weighing all that is pertinent, the jury give more damages than any one witness testified to, it has been considered to be no ground for a new trial, as being excessive. [Brewer v. Inhabitants of Tyringham,] 12 Pick. 547; [Thompson v. Porter,] 4 Bibb, 70; [Tarlton v. Briscoe,] 1 A. K. Marsh. 67. The being excessive, is the last branch of this exception. If damages are slightly more than the court deem proper, they are not to be regarded as a ground for a new trial. [Luckett v. Clark,] Litt. Sel. Cas. 178; [Caldwell v. Roberts,] 1 Dana, 355; [Smith v. Carr,] Hardin, 317; [Van Slyck v. Hogeboom,] 6 Johns. 270; Stanley v. Whipple, [Case No. 13,286.] Some cases hold, that they must be extravagantly excessive, ([Worford v. Isbel,] 1 Bibb, 247; [North v. Cates,] 2 Bibb, 591; [Roberts v. Swift,] 1 Yeates, 209;) unless some exact measure of damages exists in the case, as it does in suits on some contracts, (5 Mason, 497, [Thurston v. Martin, Case No. 14,018;] [Coffin v. Coffin,] 4 Mass. 1, 11; [Com. v. Justices of the Court of Sessions.] 5 Mass. 435.) Others, that they must be unreasonable. Sampson v. Smith, 15 Mass. 365. Or, in torts, flagrantly excessive. [Vanzant v. Jones,] 3 Dana, 464; [Outton v. Barnes,] Litt. Sel. Cas. 136; [Respass v. Parmer,] 2 A. K. Marsh. 365; [Webber v. Kenny,] 1 A. K. Marsh. 345; [Owings v. Ulory,] 3 A. K. Marsh. 454; [Vunck v. Hull,] 2 Penn.

[3 N. J. Law,] 814; [Deacon v. Allen,] 1 South. [4 N. J. Law,] 338, 386; [Clark v. Binney,] 2 Pick. 113; [Shute v. Barrett,] 7 Pick. 82; [Bodwell v. Osgood,] 3 Pick. 379; [Coffin v. Coffin,] 4 Mass. 1; [Coleman v. Southwick,] 9 Johns. 45; [Southwick v. Stevens,] 10 Johns. 443; [Sargent v. ———,] 5 Cow. 106; [Ives v. Bartholomew,] 9 Conn. 309.

It is true in this case as stated by the counsel for the defendant, the evidence as to damages on either side was general and somewhat loose. This arose from the fact, that the contested right was the main question. But the objection is not well founded, that nothing was submitted to the jury which justified any damages, or anything like the sum given. 1 Baldw. 328, [Whitney v. Emmett, Case No. 17,585.] For it was certainly shown, that the respondents made and sold pistols similar in principle to the plaintiff's, that the improvement in them was a valuable one, that there had been a long and expensive trial between these parties on the subject in New York, and another here before the present one; and every man fit for the jury box could, from all this, without having the particulars in bills of cost, form a general opinion, likely to be very sound and not unjust, as to the sum in damages which would probably indemnify the plaintiff. Washburn v. Gould, [Case No. 17,214.]

Having gone through with the specific reasons assigned for a new trial, and come to a conclusion against their sufficiency, it seems proper now to advert to some other considerations of a general character, connected with several of the objections that might in some cases operate in favor of a new trial. They are, that the counsel on the part of the defendants, and those on the part of the plaintiff, do not always agree in respect of what was in fact done or omitted to be done at this trial; and that some requests to the court, made in the argument of the cause as to charging the jury, were not complied with when the charge was finally given.

I can readily conceive of cases, where the differences in recollection between the counsel were so great after the lapse of several weeks, and the point so material, about which they differed, that the court might deem a new trial necessary to a right disposal of the case. But here, the court feels satisfied, where they differ on what is material, and it is for the court in each case to decide on these differences. (Bond v. Cutler, 7 Mass. 205; [Inhabitants of the First Parish in Brunswick v. McKean,] 4 Greenl. 508,) that, looking to its own minutes and the leading points made on each side, the course pursued at the trial was such as it has just explained under the different objections; and in respect to the merits of the case, as tried and settled in the end, that no injustice is likely to happen from coming to the conclusion, not to disturb the verdict. Again, I can conceive of cases in the hurry of a trial at nisi prius, and one like this of ten days' length, where some omission of the court or counsel must have had such an influence on the verdict as to require a new trial. For there may be mistakes, not to say sins of omission as well as commission, in all concerned in administering the laws. But the omissions, supposed to have occurred here in charging the jury on particular points, are not admitted by the counsel on the other side to have happened in some of the cases supposed; and, in the others, they related to questions as before shown, which did not arise on the evidence, and on which instructions ought not to be given. It is well, also, in all cases to remember, that after a judge has charged the jury, in a written list of the points, on which instructions are requested by either party, has not been handed to him in conformity to the practice in most of the states south of us, it is their duty after the charge is closed, to call his attention to any point which has been omitted, as some oversights are likely to happen where the points are numerous, and the evidence to be commented on to the jury is very abundant and complicated. Stanton v. Barrister, 2 Vt. 464. If the counsel do observe such omissions at the time, and do not mention them, so that they may be corrected and supplied at once, before the jury go out, it would be a very dangerous practice to let his client take the chance of a verdict, before naming them, and then, if losing the verdict, for the first time proceed to suggest the omission as a ground for a new trial. On the contrary, if counsel do not at the time observe any omissions, it is pretty conclusive evidence, that the points omitted were not then deemed very material, since they did not make so much impression on their minds as to cause them to notice that instructions had not been given concerning them.

My own opinion as to the importance of any points omitted, which were relevant, corresponds with this supposition, that they were of little weight, and did not alter the verdict in any respect. There are some cases on this point not uninstructive. Thus it has been settled, that it is no ground for a new trial, if the judge omitted to charge on some points, unless the omission probably influenced or changed the verdict. [Grimes v. Coyle,] 6 B. Mon. 301; Grah. N. Tr. 273; [Morrison v. Muspratt,] 12 Moore, 231; Armstrong v. Toler, 11 Wheat. [24 U. S.] 277; Calbreath v. Gracy, [Case No. 2,295;] [Den v. Sinnickson,] 4 Halst. [9 N. J. Law,] 149. And that it is too late to remind the court of any omission after the jury have retired. State v. Catlin, 3 Vt. 534. In fine, the general rule as to new trials throughout is not to disturb the verdict, if it appears to be according to the justice of the case, and according to the justice of the case, and the ruling is only doubtful in point of law. [Rodgers v. Page,] Brayt. 169; [Breckinridge

v. Anderson,] 3 J. J. Marsh. 710. Though, if the ruling be clearly wrong, it will be, as a general rule, a good ground for a new trial. [Doe v. Buford,] 1 Dana, 481, 502; [Gillespie v. Gillespie's Heirs,] 2 Bibb, 89; [Wardell v. Hughes,] 3 Wend. 418. But in examining the elementary books and cases on this subject, it is highly important to discriminate what are the exceptions from what is the general rule on this last point. Thus, as a general rule, though it will be a ground for a new trial, if illegal testimony is admitted. ([1] Grah. N. T. 236, 237, and cases cited; 2 Wash. C. C. 276, [Stevelie v. Read, Case No. 13,389]; [Walker v. Leighton,] 11 Mass. 140,) yet it is equally well established as an exception, not to grant a new trial if it be manifest that the illegal evidence has not prejudiced the case, ([Winchell v. Latham,] 6 Cow. 682; [Tullidge v. Wade,] 3 Wils. 18; [Horford v. Wilson,] 1 Taunt. 12; [Strange v. Wigney,] 6 Bing. 681.) Or if the legal objection is merely technical, e. g. as to admitting a printed statute when an exemplification is proper; and when on a new trial the same result will probably happen. [Ackley v. Kellogg,] 8 Cow. 223; [Watkins v. Towers,] 2 Term R. 275; [Norris v. Badger,] 6 Cow. 449. Or if the evidence became immaterial, and the jury did not rely on it probably. [Marquand v. Webb,] 16 Johns. 92; [Osgood v. Manhattan Co.,] 3 Cow. 621; Preston v. Harvey, 2 Hen. & M. 55. Or if there was enough to justify the verdict without it, on examining the report of the case. Doe v. Tyler, 6 Bing. 561. Or if the rejection was right, but on a ground different from that assigned. [Lessee of Ludlow's Heirs v. Park,] 4 Ham. [4 Ohio,] 5; [Longes v. Kennedy,] 2 Bibb, 608. So, if incompetent evidence be admitted, the court will not grant a new trial if it was not material. [State v. Chesley,] 4 N. H. 369; [Bunce v. Wolcott,] 2 Conn. 31; [Jewett v. Stevens,] 6 N. H. 80, sed quaere; [Prince v. Shepard,] 9 Pick. 176. Or if no injustice appears to have been done by it. Brown v. Wilde, 12 Johns. 455; [Den. v. Vancleve,] 2 South. [5 N. J. Law,] 765; [Barney v. Goff,] 1 D. Chip. 304; [Thurlow v. Massachusetts,] 5 How. [46 U. S.] 509; Hamblett v. Hamblett, 6 N. H. 333. Or if cumulative merely. [Lessee of Allen v. Parish,] 3 Ham. [3 Ohio,] 107; [Stone v. Stevens,] 12 Conn. 219. Or if not controverted. [Crosby v. Fitch,] Id. 410. Or if the fact was proved also by other evidence. [Norris v. Badger,] 6 Cow. 449. So, [Horford v. Wilson,] 1 Taunt. 12, and [Nathan v. Buckland,] 2 Moore, 153; Prince v. Shepard, 9 Pick. 176; [Supervisors of Chenango v. Birdsall,] 4 Wend. 453; [Stiles v. Tilford,] 10 Wend. 338. Again, it is a general rule to grant a new trial if there was any misdirection on the law to the jury. [1] Grah. N. T. 262, cases cited; [Boyden v. Moore,] 5 Mass. 365. But it is an exception, if no injustice seems to have been done by it, as if it was on a trifling or immaterial point; or did not affect the verdict; or if justice appears to have been done. [Johnson v. Blackman,] 11 Conn. 342; [Olmsted v. Hoyt,] Id. 377; [Lee v. Chambers,] 3 J. J. Marsh. 506; [Dole v. Lyon,] 10 Johns. 447; [Woodbeck v. Keller,] 6 Cow. 118; [Hoyt v. Dimon,] 5 Day, 479; [High v. Wilson,] 2 Johns. 46; [Boyden v. Moore,] 5 Mass. 368; [Dudley v. Sumner,] 5 Mass. 438, 487; [Estwick v. Caillaud,] 5 Term R. 425; [McLanahan v. Universal Ins. Co.,] 1 Pet. [26 U. S.] 183; [1] Grah. N. T. 301, 341, 342, and cases cited; [Smith v. Frampton,] 2 Salk. 644; [Deerly v. Duchess of Mazarine,] Id. 646. Or the objection was only technical. [Edmondson v. Machell,] 2 Term R. 4; [Cox v. Kitchin,] 1 Bos. & P. 338, and note; [Robinson v. Cook,] 6 Taunt. 336; [Springer v. Rowdoinham,] 7 Greenl. 442; [Haynes v. Jenks,] 2 Pick. 177; [Baylies v. Davis,] 1 Pick. 206; [Hoyt v. Dimon,] 5 Day. 479; [Brown v. McConnell,] 1 Bibb, 265; [Owens v. Conner,] Id. 606. It is an exception, too, if the point was frivolous or litigious. [Coit v. Tracy,] 9 Conn. 1; [Aylwin v. Ulmer.] 12 Mass. 22; [Tyler v. Ulmer,] Id. 163; [Hyatt v. Wood,] 3 Johns. 239; [Jaques v. Todd,] 3 Wend. 83; [Goodrich v. Walker,] 1 Johns. Cas. 250; [Hunt v. Burrel,] 5 Johns. 137; [Robbins v. Treadway,] 2 J. J. Marsh. 546.

Furthermore, if I could find errors in the instructions to the jury, not specified, which led or were likely to lead to injustice, such as my remarks, that the improvement was useful in itself, though in fire-arms or instruments of war and death, because increasing the powers of high civilization over barbarism, and thus tending to preserve and perpetuate all the benefits of the former from the destruction which, in former ages, often assailed it from rude force; and my other remark, that if this invention was not useful to the community in making pistols, the defendants would not be likely to use it; or if other presumptions of error existed, because the finding for the plaintiff by the jury was unexpected and strange, when in fact the plaintiff alone had taken out any patent for this improvement, and had first brought it into general use, and the defendants had not pretended themselves to have invented it; or because the giving so much damages for a violation of so useful a patent, was matter of surprise, when the whole amount was not likely more than to indemnify him for all his costs and expenses in so protracted and severe a litigation, and much less all his losses of larger sales and profits. I say, if injustice was thus apparently stamped on any part of the proceedings by observations not objected to, or by occurrences, which the court is now conscious were wrong, it would make me hesitate in refusing another trial. But when the whole aspect of the case is the other way, it seems to be my duty, in the exercise of a sound discretion, not to disturb what the jury have decided.

The second motion for the allowance of a bill of exceptions to be now filed, so as to embrace these reasons assigned for a new trial, in order to bring a writ of error on them, involves several considerations, different from those in the naked motion for a new trial. This second motion is founded upon the special proviso to the seventeenth section of the patent act of July 4, 1836. That section allows a writ of error and appeals "to the supreme court of the United States in the same manner and under the same circumstances as is now provided by law in other judgments and decrees of the circuit courts, and in all other cases in which the court shall deem it reasonable to allow the same." This presents a novel question. I am not aware of any case, and none is referred to on either side, where this portion of the patent law has received a construction in any court during the ten years since its passage. In the absence of any decision, I am inclined to the opinion, that however anxious my wishes are to facilitate attempts of parties to have a revision of the decisions of this court whenever dissatisfied with them; yet I am limited by congress in my power to allow it, and must confine the indulgence to cases where it appears to the court to be "reasonable," looking to the subject-matter of this provision, and the general law as to appeals. Opposing parties, also, have an interest in this matter against further delay and expense; and the public has a policy as to limited jurisdiction in suits, which is to be respected; and, therefore, without yielding to my own wishes to permit a writ of error or appeal in all cases, I must execute the act of congress as it exists in regard to the public interest and the convenience and rights of parties.

What then is reasonable as a general rule in respect to this request? Adverting to the manifest policy of the law as to appeals and writs of error, independent of this particular provision, it will be seen, that most cases are to be disposed of finally, in the states where one of the parties resides, as less expensive and more convenient, unless the amount in controversy be as large as $2,000, or unless the judges disagree in their opinions. There is nothing in the public policy as to the sum being now too large, which limits appeals, and hence causing a disposition to carry up cases of smaller pecuniary importance. On the contrary, two thousand dollars was regarded as high here in 1789, as three or four thousand would be now. The necessary delay of justice in the supreme court, beyond what once existed before the country grew to be so much larger and wealthier, increases the grievance of being compelled to go there unless required by strict law. I regard these objections more than any additional expense in further

hearings there, at such a distance, instead of nearer home, as the attendance of witnesses and parties is not required there. But they all show, that in a case where the amount, as here, is little over half of what was required in 1798 to carry a case up, it should not be deemed reasonable to aid in doing it, unless to promote some great end or interest, not involved simply in the payment of the sum, found as damages in this particular case. One of those ends undoubtedly is, uniformity in the construction of our great system of patent laws throughout the United States, and because questions connected with the patent laws themselves, when decided, govern numerous other cases and much larger amounts than are disclosed in any one verdict.

These considerations show that the exceptions to be allowed, using a reasonable discretion, ought to relate to constructions of the patent laws. If not to be confined to these, why limit the indulgence to patent cases? There is no reason why, as to the other incidental questions, not relating to patents, the parties in these suits should enjoy privileges concerning their decision, not enjoyed by other suitors as to such questions. Why should it be permitted, then, as to matters casually connected with suits upon the patent acts? Why, if adverting to the public interests, or the rights of opposing parties, prolong litigation on such points at great inconvenience, delay, and expense? So it is discreet and reasonable to confine the appeals, even on patent questions under the patent laws, to such as involve important and not trifling matters, connected with those laws, not mere technical difficulties; also to such as involve questions really doubtful. If the discretion concerning what is "reasonable," which is to be exercised by the court, is not to extend to a selection of cases having questions, that really relate to the patent laws, congress would have provided, that appeals should exist in respect to all patent actions without distinction. Looking to the first test, none of the causes assigned for a new trial, are to be considered in deciding as to a bill of exceptions, but the 5th, 6th, 7th, and 9th, as none others relate to the construction of the patent laws. Now the fifth, as it will be seen, if allowed in any form, must be in one already substantially settled by the supreme court in Stimpson v. Westchester R. Co., 4 How. [45 U. S.] 380, before cited; and one, probably not controverted by the defendant, when explained as it is understood by the court. The sixth, as has been shown, either attempts in its present form to raise a point about a "public use" of the plaintiff's patent, which was not made at the trial; or if it merely relies on the position, that a prior invention is not valid when a subsequent one is made, but not patented, before the first one is patented,

it seems too clear against the defendant to hang a doubt on. The seventh is now abandoned. The eighth is for a supposed omission to instruct the jury on particular points, and not for mis-instructions, and of course cannot be ground for a bill of exceptions independent of what has before been said against the intrinsic character of the rulings desired upon it. The case does not, therefore, seem to contain matter to make it a reasonable one for granting this privilege. Both motions are refused; and judgment must be entered on the verdict.